The TIMKEN ROLLER BEARING COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15097.

United States Court of Appeals
Sixth Circuit.

Dec. 21, 1963.

John G. Ketterer, Canton, Ohio (Day, Cope, Ketterer, Raley & Wright, R. M. Rybolt, Canton, Ohio, on the brief), for petitioner.

Melvin J. Welles, Atty., N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Vivian Asplund, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

David E. Feller, Elliot Bredhoff, Jerry D. Anker, Michael H. Gottesman, Washington, D. C., Herschel Kriger, Canton, Ohio, on the brief amicus curiae for United Steelworkers of America, AFL-CIO.

Before MILLER and WEICK, Circuit Judges, and WILLIAM E. MILLER, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioner, The Timken Roller Bearing Company, hereinafter referred to as the "Company," seeks to set aside an order of the National Labor Relations Board issued on August 3, 1962, which held that petitioner violated Section 8(a) (5) and (1) of the National Labor Relations Act, Section 158(a) (5) and (1), Title 29 United States Code. The Board in its answer to the petition has requested enforcement of its order. It is agreed by the parties that the court has jurisdiction of the proceeding.

This is a so-called "wage data" case, in which the Company is charged with having illegally refused to comply with the Union's request for information relating to the method used to establish the wages received by its employees. The Company's refusal to comply with this request is alleged to have been a refusal to bargain in good faith, thereby constituting an unfair labor practice, in violation of Section 8(a) (5). The violation of this section of the Act in turn results in the Company engaging in an unfair labor practice within the meaning of Section 8(a) (1) of the Act.

The Company, an Ohio corporation, maintains its principal office and place of business in Canton, Ohio, where it is engaged in the manufacture, sale and distribution of roller bearings. For many years the Union * has been the bargaining representative of the production and maintenance workers at the Company's plant at Canton, Ohio. Each product and operation performed in the plant carries a fixed wage rate, which is determined by a very complex system of detailed time studies, operation observations, personal motions recordings, and a myriad set of detailed evaluations of every separate element and aspect of the production process. The basic and precise elemental factors considered were all reduced to writings called time-study sheets. As the changing needs of the Company develop, old methods are reevaluated, new products are conceived, improved and more efficient methods are evolved, and, in consequence of successive studies and evaluations of work effort by the individual employee operators, changed basic time studies are produced and new and different wage rates established.

The Company's practice of using this complex technique for establishing the wage structure of the employee has been recognized in bargaining contracts between the parties prior to the contract involved in the present case, which was executed February 21, 1960. The 1960 contract provides that the wage structure in existence at the moment the current contract is signed shall be frozen for the duration of the agreement except as changed during its life pursuant to the contract provisions themselves. Article V, paragraph B, provides with respect to new rates:

"It is recognized that the Company at its discretion may find it necessary or desirable from time to time to establish new wage rates or to adjust existing wage rates because of any of the following circumstances: * * *."

The contract thereafter lists six "circumstances," such as changes or improvements made in equipment, new or changed standards of manufacture, establishment of changed or new occupations in the plant, and the introduction of new products and additions to the present line of products in the plant. Under Article V, paragraph C, the Company agrees that when it deems it necessary or desirable to establish a new wage rate, it shall develop and install the new rate in accordance with the Company's practice in effect on the date of the agreement. Article V, paragraph C, also provides that a grievance may be filed by any employee who is affected by such new

---

* United Steelworkers of America, AFL-CIO, and its Local No. 1123.

rate. Article IX sets forth the procedure for adjustment of grievances, which includes four successive steps, the last of which is arbitration.

In the summer of 1960, among the pending grievances, there were five directly arising from newly established wage rates, which the employees contended were a reduction of rates and improperly established under the contract. These five pending grievances had proceeded beyond the third step of the grievance procedure as far back as the summer of 1959 and awaited hearings before a chosen arbitrator in each instance. They were held in abeyance as the parties met in negotiation sessions aimed at a renewal of the 1956 contract due to expire on August 24, 1959. A new two-year contract was signed on February 21, 1960. There is no substantial difference, in terms of wage provisions or grievance procedures, between the two agreements.

On July 18, 1960, the Union wrote a letter to the Company in which it requested wage rate information relating to the grievances involved in all five of the pending arbitration cases referred to above. This request included the original time study sheets and other documents relative to both the prior rates and the new rates, all other data and information which was used to determine the rate of pay for each job, and all documents, studies and other information that were used to evaluate such job, both prior to the change and thereafter, including full information as to the weights given to each factor used to arrive at a final decision on the established rate and what factors were considered in making such decision. It explained that this information was needed because "each of these cases protest the institution of new reduced rates in place of rates theretofore in effect and/or the adequacy, fairness and method of establishment of new rates in their stead." The letter further requested the Company to supply time study manuals, instructions and procedures used in the making of time studies of jobs in the plants. The letter stated that the information requested was necessary to the Union so that it might intelligently evaluate the various rates of pay in the plants, especially as they may be changed from time to time, and "to properly administer the contract."

The Company responded to the Union's request by letter of August 1, 1960, in which it stated that it would not comply with the request. The Union repeated its demand by letter of August 29. The Company again denied the request by letter of September 15. The Company's position was that its obligation to bargain with the representative of its employees, once the contract had been entered into, was to bargain on matters covered by the contract in the manner of bargaining prescribed by the contract; that it had no obligation to agree to any modification of the terms and conditions contained in the contract as long as it remained in effect; that the contract contained adequate provisions for the discussion and settlement of any and all grievances arising under the contract that dealt with the establishment of new rates; that if there was any information that the Union needed for the proper disposition of the listed rate grievances, it was its obligation to secure this information in accordance with the grievance provisions of the contract; and that under the contract, employees working under a new rate might choose to either file a grievance or not to do so, and that it was only when a grievance was filed that the Union had any responsibility with regard to the new rate, and then its interest was confined to the newly established specific rate and not to the rate structure in general. The Company stated that it was willing to proceed with respect to rate grievances strictly in conformity with the 1956 and 1960 agreements whichever was applicable, but it was not interested in negotiating a new contract dealing with the subject of rate establishment. In two grievances which went to arbitration the Company's action was consistent with this position, in that it declined to furnish requested wage information unless the arbitrator ruled

that it was required to do so. In one of these matters the arbitrator ruled that the Company was not required to furnish the information requested. In the other matter the arbitrator asked the Company to deliver some of the requested wage data to the Union and the Company complied with this direction.

Following a charge by the Union on November 25, 1960, a complaint was issued on January 5, 1961, by the Regional Director of the National Labor Relations Board alleging that the Company had committed an unfair labor practice affecting commerce within the meaning of Section 8(a) (1) and (5) of the Act. Following the filing of an answer by the Company and a hearing, the Board concurred in the findings and rulings of the Trial Examiner and issued its order of August 3, 1962, directing the Company to cease and desist from refusing to bargain collectively with the Union by refusing to furnish to the Union information and data concerning time studies and methods used for establishing wage rates, and affirmatively directing the Company to furnish such time studies, wage data and information to the Union upon request. This is the order which is before us on review.

■ It appears to be well settled that an employer is guilty of an unfair labor practice in refusing to bargain collectively as required by Sections 8(a) (5) and 8(d) of the Act, by refusing to furnish relevant wage information and data requested by a union as the certified representative of the employees in connection with negotiations for a collective bargaining agreement. N. L. R. B. v. J. H. Allison & Co., 165 F.2d 766, 3 A.L.R.2d 990, C.A.6th, cert. denied, 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369; N. L. R. B. v. Hekman Furniture Co., 207 F.2d 561, C.A.6th; N. L. R. B. v. John S. Swift Co., 277 F.2d 641, 645, C.A.7th; N. L. R. B. v. Leland-Gifford Co., 200 F.2d 620, 624, C.A.1st; N. L. R. B. v. Yawman & Erbe Mfg. Co., 187 F.2d 947, C.A.2nd. See also: N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027.

■ The cases also hold that this right to relevant wage information and data is not limited to the period during which the employer and the union are engaged in negotiations for a collective bargaining agreement, but includes the processing of a grievance under the bargaining agreement and the union's bona fide actions in administering the bargaining agreement during the period of its existence. J. I. Case Company v. N. L. R. B., 253 F.2d 149, 155, C.A.7th; N. L. R. B. v. F. W. Woolworth Co., 352 U.S. 938, 77 S.Ct. 261, 1 L.Ed.2d 235, reversing N. L. R. B. v. F. W. Woolworth Co., 235 F.2d 319, C.A.9th; N. L. R. B. v. Otis Elevator Co., 208 F.2d 176, C.A. 2nd; N. L. R. B. v. Whiting Machine Works, 217 F.2d 593, 594, C.A.4th, cert. denied, 349 U.S. 905, 75 S.Ct. 583, 99 L.Ed. 1242; N. L. R. B. v. Item Company, 220 F.2d 956, 958, C.A.5th, cert. denied, 350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746, rehearing denied, 350 U.S. 905, 76 S.Ct. 177, 100 L.Ed. 795; Boston Herald-Trav. Corp. v. N. L. R. B., 223 F.2d 58, 63, C.A. 1st.

■ The Company contends that although the Union may have the right to such wage information, such right can be waived, and, in fact, was waived by the Union in the negotiations leading up to the execution of the collective bargaining agreement on February 21, 1960.

In the negotiations preceding the execution of that agreement the Union submitted a proposal which required the Company to furnish the kind of information now sought by it. This proposal was rejected by the Company. The Union, however, continued unsuccessfully to press this proposal. It was not included in the bargaining agreement as finally executed. The Company contends that this constituted a waiver of the right of the Union to demand and obtain such data. N. L. R. B. v. Jacobs Mfg. Co., 196 F.2d 680, C.A.2nd; N. L. R. B. v. Nash-Finch Co., 211 F.2d 622, 626, 45 A.L.R.2d 683, C.A.8th; International News Service Div. of the Hearst Corp., 113 N.L.R.B. 1067.

This reasoning would probably be applicable if the right or benefit sought by the Union was a right or benefit which could only be acquired by virtue of the bargaining agreement. Under such circumstances a failure to include it in the agreement necessarily results in a failure to acquire it. United States Steel Corp. v. Nichols, 229 F.2d 396, 399–400, 56 A.L.R.2d 980, C.A.6th, cert. denied, 351 U.S. 950, 76 S.Ct. 846, 100 L.Ed. 1474.

However, in this case we agree with the Board that the Union's right to wage information it needed to administer the bargaining agreement was a right which it had under Section 8(d) of the National Labor Relations Act, Section 158(d), Title 29 United States Code, and the existence of this right was not dependent upon it being included in the bargaining agreement. It was not a right obtained by contract, such as would be the case in increased wages, longer vacations, pension rights, and certain so-called fringe benefits. The failure to have the right recognized by the Company in the bargaining agreement, which would probably eliminate the necessity of possible litigation over it later, does not mean that it does not exist by virtue of the statute.

The Company challenges the characterization of this right as a statutory right in that no statute expressly so provides. Although Section 8(d) of the Labor Relations Act does not expressly so provide, it has been construed by the cases hereinabove referred to as providing such a right, and we find no error in characterizing it as a statutory right. It was so characterized in N. L. R. B. v. Yawman & Erbe Mfg. Co., supra, 187 F.2d 947, 949, C.A.2nd. See also: California Portland Cement Co., 101 N.L.R.B. 1436.

Even so, we recognize that the Union could have relinquished this right under the provisions of the bargaining agreement if it, as a part of the bargaining process, elected to do so. But such a relinquishment must be in "clear and unmistakable" language. Tide Water Associated Oil Company, 85 N.L.R.B. 1096; N. L. R. B. v. Item Company, supra, 220 F.2d 956, 958–959, C.A.5th, cert. denied,

350 U.S. 836, 76 S.Ct. 73, 100 L.Ed. 746, rehearing denied, 350 U.S. 905, 76 S.Ct. 177, 100 L.Ed. 795. Silence in the bargaining agreement on such an issue does not meet this test. This Court said in N. L. R. B. v. J. H. Allison & Co., supra, 165 F.2d 766, 768, 3 A.L.R.2d 990, C.A. 6th, cert denied, 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369, "Nor do we see logical justification in the view that in entering into a collective bargaining agreement for a new year, *even though the contract was silent* upon a controverted matter, the union should be held to have waived *any rights secured under the Act*, including its right to have a say-so as to so-called merit increases." (Emphasis added.) We are of the opinion that the execution of the 1960 bargaining agreement, which was silent on this controversial question did not constitute a relinquishment of the Union's statutory right to the wage information which it now seeks. N. L. R. B. v. Hekman Furniture Co., supra, 207 F.2d 561, C.A.6th; N. L. R. B. v. Otis Elevator Co., supra, 208 F.2d 176, 179, C.A.2nd; N. L. R. B. v. Yawman & Erbe Mfg. Co., supra, 187 F.2d 947, 949, C.A. 2nd.

The Company further contends that although the Union may have the right to certain relevant and material wage information, it does not have an unlimited right to information generally from the Company's books, and in the event the Company refuses to honor the Union's demand, the enforcement of the claimed right must be through the grievance procedure provided by the bargaining agreement, which terminates with arbitration. In other words, it is for the arbitrator to decide whether the Company's refusal to furnish the information is justified under the particular circumstances involved, and that neither the Board nor the Court has the authority to decide this issue. It is argued that the demand by the Union, the refusal of the Company to comply with the demand, and the Union's attempt to enforce its claimed right is a "complaint," which under the provisions of the bargaining agreement must be channeled through

Article IX of the bargaining agreement, which provides the procedure for the adjustment of "complaints or grievances." United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409, frequently referred to as the trilogy of cases. In this connection it is pointed out that although the Company contends the Union is not entitled to the information, it is willing to submit the matter to arbitration under Section IX of the bargaining agreement and to comply with the arbitrator's ruling. It takes the position that it is an intrinsic contradiction for the Court to say that although the employer is required by his contract to arbitrate complaints and grievances, his "willingness to abide by, and faithfully carry out, the terms of his contract becomes itself a failure to bargain." Sinclair Refining Co. v. N. L. R. B., 306 F.2d 569, 575, C.A.5th. As the Court said in N. L. R. B. v. Nash-Finch Co., supra, 211 F.2d 622, 627, C.A.8th, "The respondent, we think, may not be convicted of an unfair labor practice for doing no more and no less for its union employees than its collective bargaining agreement with them called for."

The soundness of this reasoning, of course, depends upon whether the demand by the Union and the Company's refusal to honor it constitutes a complaint or grievance within the provisions of Section IX of the bargaining agreement. If it is not within the provisions of Section IX, arbitration of the issue is not required and the Company's insistence upon arbitration is unjustified. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241–243, 82 S.Ct. 1318, 8 L.Ed.2d 462.

Article IX of the bargaining agreement deals with "Adjustment of Grievances." Paragraph E thereof states:

"The parties agree that the provisions of this Article IX provide adequate means, if followed, for the adjustment and disposition, of any complaints or grievances."

It then provides:

"Any employee who has a complaint concerning wages, hours and working conditions that directly affect him at the time of such complaint, may discuss the alleged complaint with his immediate supervisor in an attempt to adjust it and if such complaint is not adjusted to his satisfaction shall be entitled to file and process a grievance as provided in this Article, 'Adjustment of Grievances'."

The grievance procedure consists of three successive steps, followed by a fourth step consisting of arbitration if the grievance is not adjusted in the prior proceedings. Each of these steps refers to a "grievance" of an "employee." It is provided in Step 3 of the Agreement, "Only grievances involving the interpretation or application of this agreement or disciplinary action are eligible for appeal to arbitration. * * * "

The Company's contention that the request of the Union for wage information and the refusal of the Company to supply it in the absence of an order to do so constitutes a complaint or a grievance which is subject to arbitration under the terms of the collective bargaining agreement is, in our opinion, unsound for the following reasons.

First, Article IX provides that only grievances involving the interpretation or application of the agreement (or disciplinary action, which is not applicable here) is eligible for appeal to arbitration. As hereinabove pointed out, the right of the Union to wage information was not acquired through the bargaining agreement. Whether the demand of the Union should be honored, accordingly, does not involve the interpretation or application of the agreement, which is necessary in order to be eligible for arbitration, but, on the contrary, involves the interpretation and application of the National Labor Relations Act.

Secondly, Step 1 of the grievance procedure provided by Section IX is expressly limited to "An employee who has not been able to adjust his grievance with his immediate supervisor." Thereafter, Steps 2, 3 and 4 (arbitration) deal with this same employee grievance. We do not construe the claim of the Union in the present case as being such an employee grievance. Local Union No. 998, Intern. Union, United Auto, Aircraft and Agr. Implement Workers of America, A.F.L.-C.I.O. v. B. & T. Metals Co., 315 F.2d 432, 437, C.A.6th. It was not limited to the settlement of pending grievances. It was also for the purpose of enabling it to "intelligently evaluate the various rates of pay in the plants" and "to properly administer the contract." Without this information it would be difficult, if not impossible, as a practical matter to evaluate a new rate, to check on the fairness of the Company's determination, and to determine whether an employee had a valid grievance which should be asserted. With such information the Union is in a better position to advise an employee about his rights, to reject those employee claims which are not supported by the facts, and to protect the rights of employees generally in properly administering the contract. Sinclair Refining Co. v. N. L. R. B., supra, 306 F.2d 569, 571, C.A.5th. As stated in Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, the bargaining representative's duty does not come to an abrupt end with the making of an agreement between the union and the employer, but collective bargaining is a continuous process involving both matters not covered by the existing agreement and the protection of employee rights already secured by contract.

The Company, in support of its contention, relies strongly upon Timken Roller Bearing Co. v. N. L. R. B., 161 F.2d 949, C.A.6th, and Sinclair Refining Co. v. N. L. R. B., supra, 306 F.2d 569, C.A.5th.

In the Timken Roller Bearing Co. case it was held that the company had not refused to bargain in insisting that the dispute over its right to subcontract, which it claimed was a function of management over which the union had no jurisdiction, be handled through the grievance procedure provided by the contract. This ruling was based upon the fact that the bargaining agreement contained a provision that should "differences arise between the Company and the Union as to the meaning and application of the provisions of this agreement" such "differences" should be settled within the grievance procedure. It was held in that case that the dispute over the company's right to subcontract was such a "difference" and that the company, accordingly, had the right to insist on that procedure being followed. In the present case, although the dispute between the Company and the Union over the right to wage information and data is a "difference," it is not a difference or a grievance "involving the interpretation and application of the provisions of" the bargaining agreement, and, accordingly, the Company did not have the right to insist on use of the grievance procedure. We find no conflict between the cases.

In the Sinclair Refining Co. case the employer demoted two employees "because of lack of work," which, under the bargaining agreement, was not subject to arbitration. The union filed a grievance which claimed that the alleged "lack of work" was the result of contracturally wrongful assignment or allocation of work. The employer conceded that since a dispute existed between it and the union, it was subject to arbitration under the provisions of the bargaining agreement, but insisted that on the merits the union had no right to challenge or question its action in any way. While the grievance was in the first two steps the union demanded certain wage information and data. The employer refused to furnish this data on the ground that since the demotion was exclusively a management function not subject to challenge by the union, the data sought, even if otherwise relevant, was wholly immaterial. This resulted in the institu-

**754**

tion of an unfair labor practice proceeding. The Labor Board ruled that the employer had failed to bargain in good faith in refusing to furnish the information demanded. However, the Court of Appeals denied enforcement of its cease-and-desist order. The Court held that the Board proceeding could not be used to secure data for use in a grievance proceeding where determination of relevance and pertinency required determination of the critical substantive issue of the grievance itself, which issue was under the bargaining agreement for the arbitrator not the Board or the Court. This is but another example of the now established law that where a dispute or "difference" is subject to grievance procedure and arbitration by reason of the provisions of the bargaining agreement, that procedure is exclusive and will be enforced. In the present case, as we have pointed out, the dispute or "difference" is not subject to the grievance procedure and arbitration provided by the bargaining agreement. This distinction was recognized and applied by the same court and the same opinion writer in Local Union No. 787, Intern. Union of Elec. Radio and Mach. Workers A.F.L.-C.I.O. v. Collins Radio Co., 317 F.2d 214, 219–220, C.A.5th. The opinion in the Collins Radio Co. case also answers the company's contention that the Supreme Court's recent trilogy opinions, hereinabove referred to, require a different ruling from what we have reached.

■ It is for the Court, not the arbitrator, to decide whether a claim is an arbitrable one under the bargaining agreement. Atkinson v. Sinclair Refining Co., supra, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462; Local Union No. 998, Intern. Union, United Auto, Aircraft and Agr. Implement Workers of America, A.F.L.-C.I.O. v. B. & T. Metals Co., supra, 315 F.2d 432, 436, C.A.6th. We are of the opinion that the claim of the Union for wage information and data was not an arbitrable one and that the Company was not justified in refusing to give the Union wage information on that ground.

■ We are also of the opinion that the good faith belief of the Company that it was not required to bargain with the Union is no defense to a refusal to bargain. N. L. R. B. v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823; International Ladies' Garment Workers' Union, A.F.L.-C.I.O. v. N. L. R. B., 366 U.S. 731, 739, 81 S.Ct. 1603, 6 L.Ed.2d 762; Old King Cole, Inc. v. N. L. R. B., 260 F.2d 530, 532, C.A.6th.

The petition to set aside the order of the Board is denied and enforcement of said order is decreed.