**Charles L. HAWKINS, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 15171.**

United States Court of Appeals
Seventh Circuit.

March 22, 1966.

Jack C. Brown, Indianapolis, Ind., Jenner & Brown, Indianapolis, Ind., of counsel, for petitioner.

Richard C. Hotvedt, Washington, D. C., John C. Peet, Jr., Philadelphia, Pa., for intervenor.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Theodore J. Martineau, Attorney, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Gary Green, Attorney, N. L. R. B., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

DUFFY, Circuit Judge.

This is a petition by Charles L. Hawkins to review and set aside that portion of the order of the National Labor Relations Board issued on April 26, 1965,[1] which dismissed the Section 8(a) (3) allegations of an unfair labor practice complaint against Mitchell Transport, Inc. (Company).

Hawkins was the charging party before the Board. He had been employed by the Company at its Mitchell, Indiana, terminal since 1953, as an over-the-road tractor-trailer driver. At all times here pertinent there had been in effect a collective bargaining agreement between the Company and the Union,[2] representing its drivers.

The agreement contains a procedure for the resolution of employee grievances filed against the Company. Under the terms of the contract, grievances are first considered at the local level. In the event a grievance is not satisfactorily resolved at the local level, the matter is referred to an arbitration committee called the Joint Multi-State Grievance Committee. This joint committee is composed of an equal number of Union and Management representatives, and may make binding disposition of grievances by majority vote.

When Dennis Burgess became terminal manager of the Mitchell terminal in July 1961, he was told by his predecessor that Hawkins was a trouble-maker. In early 1962, Maurice Tregoning became Mid-Western Regional Manager for the Company. He had the sole authority to discharge employees. He told Burgess that if Hawkins engaged thereafter in any misconduct serious enough to warrant discipline in the view of the grievance committee, Burgess should inform Tregoning.

Hawkins had filed many grievances against the Company. Between December 1962 and February 1963, he filed seven grievances concerning a variety of matters, and on one occasion, made a complaint to the Interstate Commerce Commission regarding the condition of certain equipment. During this period, terminal manager Burgess told driver Pruett that if Hawkins continued to file so many grievances, Burgess would have to fire him.

On March 21, 1963, at 3:30 a. m., Hawkins left the Mitchell terminal with a load of cement. After having delivered the load at Shelbyville, Indiana, Hawkins returned to the Mitchell terminal about 11:30 a. m. and reloaded his trailer with another load of cement.

While Hawkins was reloading the truck, the dispatcher went to lunch leaving instructions with the office manager, Mrs. Miller, to dispatch Hawkins with his new load to Bloomington, Indiana. Mrs. Miller attempted to hand Hawkins his dispatch slip but he said "I am not going

---

1. The order and decision of the Board are reported at 152 N.L.R.B. No. 10.

2. The Central and Southern Conference of Teamsters and Local Union No. 135 affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

to take that load." Mrs. Miller told Hawkins the dispatcher had stated he was to take the load, but Hawkins refused to do so. Mrs. Miller then telephoned the dispatcher for instructions. She was told to and did inform Hawkins that if he would not "take the load it will be a refusal of a run under the Uniform Rules and Regulations." [3]

Mrs. Miller requested Gene Munday to act as a witness while she asked Hawkins once more to take the load, and warned him that a refusal would warrant action under the Uniform Rules and Regulations. Hawkins again refused saying— "I am not going to take the load; besides I have got a headache." Mrs. Miller then dispatched the load to driver Munday.

Hawkins left the terminal and went home. He returned to the terminal in the afternoon and offered to take out a load but was informed that none was available. He then went to the local office of the Union. He there stated—"I figure that I will be fired from the company." When asked why, Hawkins replied— "Well, I am not taking orders from no woman. I do not take orders from my wife and I will take orders from no woman." He also stated he hoped he was fired because he needed 30 days off with pay.

When Tregoning was informed of the incident, he decided Hawkins should be discharged and so instructed Burgess. Hawkins returned to the terminal at the request of Burgess and the latter told him he was discharged. Hawkins was given a letter assigning the refusal to haul the load to Bloomington as the reason for the termination of his employment.

The following day, Hawkins and the shop-steward, Edwards, filed a grievance protesting Hawkins' discharge. The grievance was processed through the office of Union Agent May and led to a formal hearing before the Joint Multi-State Grievance Committee.

The Joint Committee, after having heard the facts pertaining to Hawkins' refusal to take the load (including allegations that other drivers had refused loads but had not been discharged), and after having reviewed the applicable contract provisions, issued a decision upholding the Company's discharge of Hawkins. [4]

The records of the two Joint Committee hearings show that neither Hawkins nor anyone on his behalf made the contention that Hawkins' discharge might have been linked to his prior grievance-filing activities.

Hawkins has not been re-employed by the Company. He filed the instant unfair labor practice charge on May 31, 1963.

The Board found that the Company discharged Hawkins for refusing an order to haul a load of cement and overruled the trial examiner's finding that Hawkins' discharge was also motivated, at least in part, by a desire to punish Hawkins for filing grievances against the Company. After having found Hawkins' discharge was for cause, the Board dismissed the portion of the complaint alleging that the Company had violated Section 8(a) (3) of the Act, by discharging Hawkins.

■■ There is no doubt that some of the Company officials were annoyed by the numerous grievances that Hawkins had filed. However, it is well settled that engaging in protected concerted activity, such as filing grievances, does not immunize employees against discharge for legitimate reasons. The bur-

3. The Uniform Rules and Regulations, which are a part of the collective bargaining agreement between the Union and the Company, define types of employee conduct subject to discipline, and also state the extent of the discipline for each proscribed offense. Under the category "Refusal of Run" the discipline stated is "Subject to Discharge."

4. On July 17, Hawkins submitted a formal request that his grievance be reopened on the basis of newly discovered evidence. The Joint Committee heard the request but ruled that there was insufficient evidence to reopen the case.

den of proof is still upon the general counsel to show that the protected activity was a cause of the discharge. Portable Electric Tools, Inc. v. N. L. R. B., 7 Cir., 309 F.2d 423; Indiana Metal Products Corp. v. N. L. R. B., 7 Cir., 202 F.2d 613.

█ It is quite clear that disagreement between the Board and the trial examiner did not turn upon the witnesses' credibility but merely upon inferences drawn from the record as a whole. Under such circumstances, no special weight need be given to the conclusion of the trial examiner. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Chauffeurs, Teamsters, etc. Local Union No. 135, 7 Cir., 212 F.2d 216, 217.

There is no suggestion in this record that the Company provoked Hawkins into disobedience so as to provide a basis for his discharge. Also, there is no basis for holding that Hawkins' punishment differed from that which another employee would have received if he had engaged in Hawkins' misconduct.

█ We hold that substantial evidence supports the Board's finding that the discharge of Hawkins should be attributed to his insubordination in refusing to haul the load of cement.

██ It is, of course, fundamental, that where, as here, factual issues are presented admitting to different conclusions, the Board's resolution should be affirmed. The applicable rule can be stated that when the record evidence concerning an employer's motivation in discharging an employee will reasonably permit of two fairly conflicting views, a reviewing court will not displace the choice of the Board.

The Company intervened in this case and contends the complaint herein should have been dismissed without a consideration of the merits because Hawkins had already taken his case to arbitration.

█ The Board agrees that its exclusive jurisdiction over an unfair labor practice charge need not always be asserted in situations where the underlying dispute has already been exposed to a private arbitration procedure. Ramsey v. N. L. R. B., 7 Cir., 327 F.2d 784, cert. den. 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052. However, in the instant case, the Joint Committee did not receive any evidence bearing on the question of whether Hawkins' discharge might also have been motivated by his protected activities.

We agree with the Board under such circumstances, the case was not a proper one for Board abstention.

The petition to review and set aside the order of the Board (152 N.L.R.B. No. 10) will be

Denied.