## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## ROCKWELL-STANDARD CORPORATION, TRANSMISSION AND AXLE DIVISION, FORGE DIVISION, Respondent,

and

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (UAW), AFL–CIO, Intervenor.

No. 18651.

United States Court of Appeals Sixth Circuit.

May 29, 1969.

Leonard M. Wagman, N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Neal J. Conway, Atty., Washington, D. C., on brief.

Leonard L. Scheinholtz, Pittsburgh, Pa., for respondent, Jonathan L. Alder, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on brief.

Before PHILLIPS, EDWARDS * and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This case is before the Court on the National Labor Relations Board's petition for enforcement (pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151 et seq.) of its Order requiring the Respondent to furnish the Union with certain requested data.

The basic facts are not in dispute. Since 1953, Local 174 of the U.A.W. (hereinafter "Union") has been certified as the bargaining representative for the office and clerical employees at the Respondent's offices located at 100–400 Clark Street in Detroit, Michigan. The employees in the bargaining unit include generally stenographers, typists, file clerks, cost and accounting clerks, and service personnel such as receptionists, telephone and telegraph operators and mail clerks. Administrative employees such as department heads and supervisory employees and their assistants and secretaries are not members of the bargaining unit.

For a number of years prior to 1964, the only corporate divisions of the Respondent which were located at the Clark Street facilities were the Transmission and Axle Division and the Forge Division. In 1964 the Respondent organized a new corporate division called "Automotive Divisions Headquarters" (hereinafter "Automotive Divisions") to perform administrative functions for all of the Respondent's divisions in the automotive field. Automotive Divisions was located at the Clark Street offices until November of 1965, at which time it was moved to an office building located at Bagley and Clifford Avenues (Bagley Building) in downtown Detroit, a distance of some three and one-half miles from the Clark Street offices.

Prior to the move of Automotive Divisions from Clark Street to the Bagley Building, bargaining unit employees performed some work for Automotive Divisions. Dictaphone operators transcribed dictation, blueprint operators made blueprints from tracings, receptionists, and telephone operators and mail clerks provided services for all the divisions including Automotive Divisions. After the move to the Bagley Building, Respondent continued to have the Clark Street unit employees perform many of the clerical functions for Automotive Divisions. For example, dictated material recorded at the Bagley Building was transported to the Clark Street offices for transcription by bargaining unit employees. Tracings from the engineering department were similarly transported from the Bagley Building to the Clark Street offices to be made into blueprints by unit employees. However, the Respondent secured an outside contract service agency to provide service personnel such as receptionists, telephone operators and mail clerks at the Bagley Building. No unit employees were terminated because of the move of Automotive Divisions and no unit employees were moved from the Clark Street offices to the Bagley Building.

* Judge Edwards took no part in the consideration of decision of this case.

As early as March 1965, some six months before the move, during negotiations for a new two year contract, the Union expressed concern that the rumored move of Automotive Divisions from Clark Street to the Bagley Building would mean the loss of unit work. Because of this concern the Union proposed amendments to the contract. One such proposal was to make the Union the bargaining representative for all the office and clerical employees of the Respondent in the Detroit area. The Respondent rejected this proposal because it contemplated the inclusion of employees at Respondent's other long established plants in the Detroit area. Another proposal provided for rearrangement of "jurisdictional districts" within the unit if any of the offices were moved to a different location. The Respondent rejected this proposal also, stating that it did not wish to expand the scope of the bargaining unit beyond the Clark Street offices.

Approximately one month before the move, the Respondent notified the Union formally that Automotive Divisions would be moved from Clark Street to the Bagley Building, that none of the unit employees at Clark Street would be terminated or moved, that unit employees at Clark Street would continue to perform the same functions for Automotive Divisions, the work to be brought from the Bagley Building to the Clark Street offices. The notification further advised that the service jobs such as reception, telephone operation and mail service would be performed at the Bagley Building by contract service employees. Representatives of the Union met with the Respondent following this notification and expressed concern over "erosion" of the Clark Street bargaining unit. In addition to requests for other information, the Union requested, and was granted, a tour of the Bagley Building. During this tour the Respondent's spokesmen told the Union representatives that the service personnel were not Rockwell-Standard employees but were employees of an outside contract service agency.

In the weeks following the tour of the Bagley Building, the Union made requests of the Respondent for a list of the names, classification and summary of job descriptions of all the non-confidential employees at the Bagley Building. The Union also filed a grievance alleging that the use of outside contract service employees was a violation of the collective bargaining agreement. Respondent rejected the requests for information and the grievance for the reasons that the collective bargaining agreement applied only to the Clark Street offices, and that the contract service employees were not its employees.

On April 20, 1966, the Union attorney wrote a letter to Respondent requesting the names, classifications, wage rates and job descriptions of all non-confidential office and clerical employees, including outside contract service employees, who were employed at the Bagley Building. The Union stated in the letter that it needed the information to determine whether unit work had been transferred from the Clark Street offices to the Bagley Building, and to enable it to determine whether to file additional grievances, file Labor Board charges or to seek contract modifications. Respondent rejected the April 20th request for the same reasons that it rejected the previous requests.

It was on the basis of the Respondent's denial of the Union's request for information contained in the letter of April 20, 1966, that the General Counsel based the charges of violation of § 8(a) (5) and (1) of the Act.

The Trial Examiner found that the Union, by its letter of April 20, 1966, requested information relevant to issues about which the parties were obligated to bargain, and that the Respondent's refusal to supply the requested information was a violation of § 8(a) (5) and (1) of the Act. The Trial Examiner recommended that Respondent be ordered to provide the requested information. The Board adopted the findings, conclusions and recommended order of

the Trial Examiner. In addition the Board ordered the posting of appropriate notices.[1]

Like the controlling facts, the basic principles of law to be applied are not here in dispute. An employer has a duty to provide, upon request, information relevant to bargainable issues. N. L. R. B. v. Truitt Mfg. Co., 351 U.S. 149, 153, 76 S.Ct. 753, 100 L.Ed. 1027 (1956); N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 435–436, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). Where the requested information concerns wages and related information for employees in the bargaining unit, the information is presumptively relevant to bargainable issues. Curtiss-Wright Corp. v. N. L. R. B., 347 F.2d 61, 69 (3rd Cir.1965); Timkin Roller Bearing Co. v. N. L. R. B., 325 F.2d 746, 750, 2 A.L.R.3d 868 (6th Cir.1963), cert. denied, 376 U.S. 971, 84 S.Ct. 1135, 12 L.Ed.2d 85 (1964). Where the request is for information concerning employees outside the bargaining unit, the Union must show that the requested information is relevant to bargainable issues. N. L. R. B. v. Goodyear Aerospace Corp., 388 F.2d 673, 674 (6th Cir.1968); Curtiss-Wright Corp v. N. L. R. B., 347 F.2d 61, 69 (3rd Cir.1965).

Respondent contends that the information about employees and work done outside the geographical scope of the bargaining unit could not be relevant to bargainable issues. However, the Union's letter of April 20th stated that the Union needed information to determine whether to process grievances, file unfair labor practice charges or seek amendments to the collective bargaining agreement.[2] If unit work was in fact transferred from the Clark Street offices to the Bagley Building, the Union may have grounds to file grievances or unfair labor practice charges. The preservation or diversion of unit work is a subject of mandatory bargaining under the Act. Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 209, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). In this case it would seem that the Union had reasonable grounds to fear that unit work was being transferred from the Clark Street offices to the Bagley Building. The parties stipulated that there was a long standing disagreement at the Clark Street offices concerning what was and what was not unit work. However, it is not the Board's function in this type case to pass on the merits of the Union's claim that Respondent breached the collective bargaining agreement or has committed an unfair labor practice. The Board's only function in such situation is in "acting upon the probability that the desired information was relevant, and that it would be of use to the union in carrying out its statutory duties and responsibilities." N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967). We cannot say that the Board was wrong in making the finding that the desired information was relevant.

Having thus determined that the requested information was relevant and that the Respondent therefore had a duty to supply it, we now turn to two other reasons advanced by the Respondent why the Board's order should not be enforced.

The first is that the Respondent was denied a full and fair hearing because of the Trial Examiner's refusal to permit Respondent to cross-examine the chair-

1. The Board's Decision and Order is reported at 166 NLRB No. 23.

2. The Respondent contends that the Union waived the right to additional bargaining on questions arising out of the move because of its agreement to a broad waiver clause in the 1965 contract. The Board correctly found, however, that there was no "clear and unmistakable" waiver of the right to bargain on these questions. N.L.R.B. v. C & C Plywood Corp., 385 U.S. 421, 430–431, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967); Beacon Journal Publishing Co. v. N.L.R.B., 401 F.2d 366, 367–368 (6th Cir. 1968); Timkin Roller Bearing Co. v. N.L.R.B., 325 F.2d 746, 750–751, 2 A.L.R.3d 868 (6th Cir. 1963), cert. denied, 376 U.S. 971, 84 S.Ct. 1135, 12 L.Ed.2d 85 (1964).

man of the bargaining unit, one Richard Hug, regarding the contents of the letter of April 20th written by the Union attorney Michael Friedman. The Respondent contends that since Friedman was not available for cross-examination about the assertions contained in the letter,[3] and since the letter contained the request for information, the denial of which formed the basis for the unfair labor practice charge, it should have been permitted to cross-examine Hug about the contents of the letter.

█ The Trial Examiner sustained the objection to the cross-examination of Hug because Hug had already testified, and been subject to cross-examination, concerning the information which he gave to the Union attorney Friedman and on which Friedman based his letter of April 20th. The Trial Examiner further ruled that if the purpose of the cross-examination was to resolve ambiguities in the language used by Friedman, Hug was not the proper person to resolve those ambiguities. It should also be noted that another Union attorney, a Mr. Fillion, informed both the Trial Examiner and counsel for Respondent that he participated with Mr. Friedman in drafting the April 20th letter, and that he was available as a witness concerning the contents of the letter. Respondent did not call him as a witness, however. Therefore any error in the Trial Examiner's refusal to permit Respondent to cross-examine Hug about the contents of the letter does not fall into the category of prejudicial error.

The Respondent also asserts that the Order should be denied enforcement because there was no showing that it had any information about the classifications, rates of pay or job descriptions of the employees of the contract service agencies providing service personnel for the Bagley Building, or that any such information existed.

█ This assertion is at first glance appealing. One cannot logically be ordered to give information which he does not possess and which does not exist. The Fourth Circuit has so held with regard to union requests for information from an employer. Korn Industries, Inc. v. N. L. R. B., 389 F.2d 117, 123 (4th Cir.1967); N. L. R. B. v. United Brass Works, Inc., 287 F.2d 689, 697 (4th Cir.1961).

However, we do not feel that this case is a proper one for the application of the above rule. Here, unlike *Korn Industries, supra,* there was no good faith compliance with the Board's order by an attempt to furnish all of the information which was available to the Respondent. Furthermore the Supreme Court has recently indicated that the standards of discovery procedures under the Federal Rules of Civil Procedure should be applicable to union requests for information. N. L. R. B. v. Acme Industrial Co., 385 U.S. 432, 437, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). Under the applicable discovery standards, if a party cannot furnish some of the requested information, it should supply that which it can and state under oath that it cannot furnish the rest. In addition, under the Federal Rules a party cannot avoid giving an answer to an interrogatory by an allegation of ignorance if the party can obtain the information from sources under its control. 4 Moore Federal Practice ¶ 33.26, 2403–04 (2d ed.)

Since there was no attempt to comply with the Board's order and no showing that the Respondent did not have and could not obtain the requested information, the Board's order must be enforced.

The Board's order will be enforced.

---

3. The record shows that Union attorney Friedman was in military service at the time of the hearing.