**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BRAZOS ELECTRIC POWER COOPERATIVE, INC., Respondent.**

No. 79–2595.

United States Court of Appeals, Fifth Circuit.

April 24, 1980.

Rehearing Denied May 29, 1980.

Elliott Moore, Deputy Assoc. Gen. Counsel, Andrew Tranovich, Barbara G. Gehring, NLRB, Washington, D.C., for petitioner.

Brown, Herman, Scott, Dean & Miles, Fort Worth, Tex., L. G. Clinton, Jr., T. J. Wray, Houston, Tex., for respondent.

Before WISDOM, FAY and TATE, Circuit Judges.

TATE, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order issued against the Brazos Electric Power Cooperative, Inc., and reported at 241 NLRB No. 160 (April 20, 1979). The Board found that Cooperative, the employer, had committed an unfair labor practice in violation of section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5). The employer's violation consisted of its failure to furnish to the union certain requested wage data concerning nonunit employees. Cooperative primarily questions the Board's determination that it was obligated to furnish this allegedly non-relevant data.

The unfair labor practice complaint charged as a violation of "Section 8(a)(5)[1] and (1)" (Complaint, par. 12) the failure of the employer to furnish the union this information at all times following its request of January 30, 1978. At the administrative hearing, the administrative law judge essentially agreed with the employer Cooperative that the mid-contract demand for wage data concerning nonunit employees did not present a relevant need for this information as bargaining data. Differing with this conclusion (but accepting the hearing judge's credibility determinations), the Board found this data relevant for collective-bargaining purposes in connection with preparation of written proposals to be used in negotiating renewal of the contract between the union and the employer Cooperative.

The Board concluded: "Under the circumstances of this case, where the estab-

lished past practice of Respondent was to maintain a degree of wage parity between nonunit and unit employees of similar skills, where the percentage wage increase granted the nonunit employees would be likely viewed by the Union as the floor from which it would make demands and below which it would not settle, where employee meetings were scheduled the next month to discuss contract proposals, and where written proposals were to be submitted within the year, the wage data concerning the nonunit personnel assumes probable or potential relevance to the Union's statutory responsibility to fully prepare for upcoming negotiations."

The Board's determination of the relevance of the information sought in a particular case must be given great weight by the courts, if only because it is a finding on a mixed question of law and fact "which is within the particular expertise of the Board." *San Diego Newspaper Guild, Local 96 v. N.L.R.B.*, 548 F.2d 863, 867 (9th Cir. 1977). See also *Local 13, District Newspaper Printing and Graphics Union v. N.L.R.B.*, 598 F.2d 267 (D.C.Cir.1979). The Board decision as to discovery-type relevance is reasonably based in law, *National Labor Relations Board v. Acme Industrial Co.*, 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *National Labor Relations Board v. Rockwell-Standard Corp.*, 410 F.2d 953, 957 (6th Cir. 1969); *National Labor Relations Board v. J. P. Stevens & Co., Inc.*, 538 F.2d 1152, 1164–65 (5th Cir. 1976), and, under the particular facts of the present case, is supported by the record. It should therefore not be disturbed upon judicial review. *Local 13, District Newspaper Printing and Graphics Union* and *San Diego Newspaper Guild*, supra.

We do not find persuasive of Board error the remaining contentions of Cooperative:

(1) Although the Board differed with the conclusion of law as to relevance of the

---

1. Section 8(a)(5), 29 U.S.C. § 158(a)(5), provides: "It shall be an unfair labor practice for an employer—(5) to refuse to bargain collec- tively with the representatives of the employees . . . ."

administrative law judge (whose credibility determinations were left undisturbed), the Board's legal conclusion as to the relevance of the information sought was within its own primary responsibility, not that of the hearing officer. Consequently, judicial deference to the board's conclusion is not lessened as a result of the contrary legal inference drawn by the administrative law judge. *Florida Steel Corporation v. N.L.R.B.*, 601 F.2d 125, 128–30 (4th Cir. 1979); *Hawkins v. N.L.R.B.*, 358 F.2d 281 (7th Cir. 1966).

(2) At the date of the hearing, Cooperative was first formally put on notice on the unfair-labor practice charge as to the basis of contract-negotiation need for the requested data (as compared with the initial grievance-founded basis). Cooperative did not, however, unconditionally agree at that time to furnish the information,[2] nor did it seek to postpone the hearing or claim inadequate advance notice of this basis for the charge. Instead, it insisted that it had been under no obligation for purposes of contract-negotiation to furnish the data prior to the hearing, an issue fully tried at the administrative hearing and determined (by the Board) adversely to the employer's contention. Under, these circumstances, we find non-meritorious the Cooperative's contention that it did not refuse to furnish the data and, hence, was not guilty of an unfair labor practice.

2. The Board summarized Cooperative's position as follows:

> During the course of the hearing, counsel for Respondent stated that, while adhering to its position that it had no legal obligation to comply with the Union's request, it was now willing to furnish the information to the Union. However, the Respondent stressed that it would not enter into any settlement agreement, post any kind of notice that it had violated the law, or in the future repeat any disclosure which it considered premature.

1. The "mad letter" of January 30, 1978, reads: "Dear Mr. Monahan:

> It has been brought to my attention that Brazos Electric Power Cooperative has recently granted a larger pay increase to non-bargaining unit employees than was granted to bargaining unit employees.

> As Bargaining Agent, I am requesting all information pertaining to this increase, pay scales for all classifications and the amount

**ENFORCEMENT OF ORDER GRANTED.**

FAY, Circuit Judge, dissenting.

I must respectfully dissent.

The record indicates that the Brazos Electric Power Cooperative (Brazos) employs both union and non-union employees. In past years, the union, Local 346 of the International Brotherhood of Electrical Workers, has negotiated and contracted for the employees it represents. The employer, Brazos, has given its non-union employees the same wage increase granted to the union employees. In 1976, a six percent per annum wage increase was negotiated for the union employees; the increase was to cover the years 1977 and 1978. A similar wage increase was given to the non-union employees.

In January, 1978, during the second year of the union contract, employer Brazos gave its non-union employees a wage increase of more than six percent. In response to this action, Mr. T. R. Shelton, business manager of the union, wrote a "mad letter"[1] to the general manager of Brazos requesting all information pertaining to the non-union employees' wage increase. The letter neither gave nor attempted to give any justification whatsoever for its demand for information. Brazos refused to furnish the information requested and subsequently

> of increase granted to all employees not within the bargaining unit. The only exception would be those employees classified as supervisors, watchmen or guards. In accordance with the National Labor Relations Act, this Local Union is entitled to this information. I will expect it to be in this office by close of business on Friday, February 10th, or I will be compelled to take legal action.

> I regret that the Cooperative has seen fit not to grant bargaining unit employees this increase, and I hope you will reconsider this decision for it is a clear violation of 8A 3 of the National Labor Relations Act. And, you will leave us no alternative but to pursue this matter by all legal means.

> Best wishes.

> Sincerely yours,
> /s/ T. R. Shelton
> T. R. Shelton
> Business Manager"

found itself charged with an unfair labor practice in violation of section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5).

The Administrative Law Judge dismissed the complaint against Brazos and found that the union had failed to justify its data request. The Board reversed this dismissal and found that Brazos was guilty of violating sections 8(a)(1) and (5). The core of the Board's opinion is that Brazos should have "guessed" that a reasonable need for such information existed. In my opinion, this is both shocking and unfounded in the law. The record shows that the first instance of the union making known *any* reason for its request came at the hearing held on August 22, 1978. At that time counsel for employer Brazos immediately responded with an unconditional [2] offer to provide the requested information.

The court has now been advised that all such information was indeed furnished. Under these circumstances, holding the employer guilty of an unfair labor practice is, in my opinion, a manifest injustice.

---

2. The majority opinion finds Brazos' offer to supply the requested information to be less than "unconditional" because Brazos was unwilling to admit to any violation of law. I disagree with the majority's interpretation; I find Brazos' statement that "[t]he company will now furnish [all information requested]" to be completely unconditional. Record, vol. II, at 12.