NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

JAGGARS–CHILES–STOVALL,
INC., Respondent.

No. 80–1923
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit A

March 19, 1981.

Elliott Moore, Deputy Assoc. Gen. Counsel, NLRB, Washington, D.C., for petitioner.

Clark, West, Keller, Butler & Ellis, Phillip R. Jones, Dallas, Tex., for respondent.

Before POLITZ, TATE and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order against Jaggars-Chiles-Stovall, Inc., a Dallas printing firm. The Board found that J-C-S, the employer, had committed an unfair labor practice in violation of section 8(a)(1) and (5) [1] of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), in failing to provide the Union with certain requested wage data concerning (1) non-union unit members and (2) supervisory workers performing bargaining unit work. J-C-S refuses to furnish

1. Section 8(a)(1) and (5), 29 U.S.C. § 158(a)(1)(5), provide:

"It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

this information because (1) certain non-union unit members requested it remain confidential and (2) there is insubstantial evidence to establish the relevancy to the union of the wage data of the supervisory workers. Because we find the employer's refusal to furnish the requested wage data to be unwarranted, we grant the enforcement of the order of the NLRB.

*Context Facts*

In 1978, Dallas Typographical Union No. 173 [hereinafter referred to as the Union] and Jaggars-Chiles-Stovall, Inc., [J-C-S] signed a collective bargaining agreement to cover the period of February 21, 1977, to June 30, 1981. (General Counsel Exhibit 2). In this agreement, J-C-S recognized the Union as the exclusive bargaining representative of all employees covered by this agreement, i. e., the Union was to represent the collective bargaining unit.[2]

In February, 1979, the Union representative at J-C-S, "Chapel Chairman" Bates,[3] requested Bob Stovall, president of J-C-S, to furnish monthly earnings figures for the month of January for all unit employees (whether union members or not), as well as for various supervisory employees. The Union sought this data in order to adequately monitor the agreement between the Union and J-C-S: specifically, the Union contended that (1) it needed the earnings data for all unit workers because it was the Union's responsibility to protect the contract's work and pay standards for all unit employees, whether union members or not, and (2) the wage data on certain supervisory personnel was needed because it was alleged that they were performing unit work perhaps in violation of the agreement.

J-C-S refused to furnish this information to the Union, and the Union subsequently filed a charge with the National Labor Relations Board, which filed a complaint alleging J-C-S violated section 8(a)(5) and (1) of the National Labor Relations Act.

A hearing was held before an administrative law judge. The ALJ determined that the information sought by the Union was indeed relevant for the Union to properly monitor the agreement. Furthermore, the ALJ concluded that the wage data was not confidential information, even if the non-Union unit employees had requested it to remain so. As a result, J-C-S was ordered to furnish the wage data sought by the Union. This recommended order of the ALJ was adopted by the NLRB, 249 NLRB No. 108, which now applies to this court for the enforcement of its order.

J-C-S opposes its enforcement for the following two contended reasons:

(1) Certain non-union unit employees specifically requested that their wage data remain confidential, and

(2) There is insubstantial record evidence to establish the relevance of wage data for supervisory personnel.

We disagree with both of these contentions.

*Confidentiality*

■ We first note that J-C-S does not challenge the *relevancy* of the wage data for non-union *unit* employees. *See generally N.L.R.B. v. Brazos Electric Power Cooperative, Inc.,* 615 F.2d 1100 (5th Cir. 1980); *San Diego Newspaper Guild, Etc. v. N.L.R.B.,* 548 F.2d 863 (9th Cir. 1977); *N.L.R.B. v. Rockwell-Standard Corp.,* 410 F.2d 953 (6th Cir. 1969). However, J-C-S contends that, in situations where non-union unit members specifically request that their wage data remain confidential, employers are under no obligation to disclose this information, relevant or not, to the union.

---

**2.** Article II, Section 1 of the agreement defined the bargaining unit:

> Jurisdiction of the Union begins with the mark-up of copy and continues on through the printing press (but excluding the making of mats, stereotypes, plastic plates, photoengraving and finishing operations beyond the printing press run.) The appropriate bargaining unit consists of all employees performing such work.

**3.** A chapel chairman is the equivalent of a shop steward.

This circuit has already addressed the issue of confidentiality of wage data. In *National Labor Relations Board v. Item Company*, 220 F.2d 956 (5th Cir. 1955), this court held that an employer had no confidentiality privilege[4] to withhold from the union relevant wage data, "which the union's own employee-members apparently refused to disclose to it." *Id.* at 959.

J-C-S maintains that *Item* is inapplicable to the instant factual circumstances because, there, no employee had asked the employer to withhold any information. We do not find this distinction to be persuasive.

■■■ The union representing a collective bargaining unit has the responsibility to represent both union and non-union members of that unit. *Abilene Sheet Metal, Inc. v. N.L.R.B.*, 619 F.2d 332 (5th Cir. 1980); *In re Carter*, 618 F.2d 1093 (5th Cir. 1980). This duty toward both union and non-union employees of the unit extends not only to the negotiations for an agreement, but also to the enforcement of the provisions of the agreement. *Cox v. C. H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir. 1979). A non-union segment of the bargaining unit, if its claim of confidentiality were recognized, could frustrate the union's attempt to fulfill its obligation to enforce the provisions of a collective bargaining contract intended to benefit both union and non-union employees. As stated in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 912, 17 L.Ed.2d 1842 (1967), "[t]he collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interest of an individual employee to the collective interests of all employees in a bargaining unit."

Respondent J-C-S, in contending that the Union's right to information is not unlimited, cites *Detroit Edison Co. v. N.L.R.B.*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). There, the court held that an employer could refuse to provide a union the results (linked with names) of aptitude tests taken by unit employees.[5] *Detroit Edison Co.* is, however, inapposite to the case before us. Wage data concerning each employee, here involved, is not akin to the sensitive individualized test-result information, as to which a defense of confidentiality was recognized in *Detroit Edison Co.*; nor did that decision cast doubt upon the previously-cited consistent jurisprudence rejecting any claim of confidentiality, where relevant wage data was sought by the bargaining unit's representative.

*Supervisory Workers*

■■■ J-C-S correctly argues that wage data on employees outside the bargaining unit must meet a standard of relevance. *Rockwell-Standard Corp., supra*, 410 F.2d at 957. However, as this court has already noted, "[t]he Board's determination of the relevance of the information sought in a particular case must be given great weight by the courts, if only because it is a finding of law and fact" within the expertise of the NLRB. *NLRB v. Brazos Elec. Power Co-op., Inc.*, 615 F.2d 1100, 1101 (5th Cir. 1980).

■■■ The Union sought the wage data on certain foremen and assistant foremen who occasionally performed unit work. The Union needed this information primarily to ensure that article II, section 6 of the agreement was not violated. This section read in pertinent part:

Foremen may perform production work to expedite the production schedule, but will not perform such work to reduce overtime or to maintain a smaller work force than otherwise would be required. Assistant foremen doing journeymen's work shall be classified as hourly employees and shall be subject to all regulations applying to journeymen.

The Union argues that the earnings data for assistant foremen is necessary to verify

---

4. Other circuits likewise treat the wage data of unit employees to be non-confidential. See, e. g., *NLRB v. Frontier Homes Corporation*, 371 F.2d 974 (8th Cir. 1967); *Utica Observer-Dispatch, Inc. v. N.L.R.B.*, 229 F.2d 575 (2d Cir. 1956); *Boston Herald-Traveler Corporation v. N.L.R.B.*, 223 F.2d 58 (1st Cir. 1955).

5. "The sensitivity of any human being to disclosures of information that may be taken to bear on his or her basic competence is sufficiently well known ...." *Detroit Edison Co., supra*, 99 S.Ct. at 1133.

the employer's records concerning the amount of overtime unit work performed by them.[6] Furthermore, although Chapel Chairman Bates admitted on cross-examination (Trial p. 64–68) that the amount of overtime hours worked by a foreman would be sufficient (because the foreman worked on a straight salary and received no overtime compensation), the earnings data is relevant as permitting verification that foremen were not being paid for additional hours for performing unit work, perhaps in violation of the agreement between the Union and J-C-S.

Thus, the ALJ and the NLRB properly held that the requested wage data on the foremen and assistant foremen who performed unit work is relevant information for the union's monitoring of the employer's performance of its obligations under the collective bargain contract with regard to the bargaining unit's work and pay standards. In addition to cases previously cited, see also: *Curtiss-Wright Corp., Wright Aero. Div. v. N.L.R.B.*, 347 F.2d 61, 64 (3rd Cir. 1965); *Hollywood Brands, Inc. and United Bakery & Confectionery Workers Local 441–B, 142 N.L.R.B. 304*, enforced, *Hollywood Brands v. N.L.R.B.*, 324 F.2d 956 (5th Cir. 1963), *rehearing denied*, 326 F.2d 400, *cert. denied*, 377 U.S. 923, 84 S.Ct. 1221, 12 L.Ed.2d 215 (1964).

*Conclusion*

Under these circumstances, J-C-S was properly found to have committed an unfair labor practice in refusing to furnish the Union with relevant wage data it requested. The Board order will be ENFORCED.

ENFORCED.

---

**6.** Bates testified:

Assistant foremen are paid a percentage above journeymen wages. If he works overtime he's paid overtime on the basis of his pay, not journeyman scale, therefore, he would draw overtime on a—time and a half of his regular hourly wages. To know that he was being paid properly it would be necessary to know the amount. To know that the overtime was being distributed equitably we would need to know the number of hours. To compile as to whether the overtime pay and hours did correspond we would need to know them both.

Trial p. 69.