## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## UNITED STATES POSTAL SERVICE, Respondent.

No. 89–8041.

United States Court of Appeals, Eleventh Circuit.

Nov. 30, 1989.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Peter D. Winkler, Scott MacDonald, Karen Cook, Washington, D.C., for petitioner.

John C. Oldenburg, U.S. Postal Service, Office of Field Legal Services, Southern Div., Memphis, Tenn., Jesse L. Butler, U.S. Postal Service, Stephen E. Alpern, Washington, D.C., for respondent.

Anthony L. Harrison, Harrison & Harrison, St. McDonough, Ga., for interested party Nat. P.O. Mail Handlers, Watchmen, et al.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The United States Postal Service appeals the National Labor Relations Board's order requiring it to furnish to postal employees' unions, whose members are subject to disciplinary actions, records disclosing disciplinary actions taken against supervisors for engaging in conduct similar to that charged against the union employees. We enforce the Board's order.

## FACTS

Following an investigation into gambling activities at the Atlanta, Georgia Post Office in the summer of 1986, Post Office authorities (Post Office) disciplined and discharged some of its bargaining unit employees. Amalgamated Local 310 ("Local 310"), an affiliate of the National Post Office Mail Handlers, Watchmen, Messengers and Group Lenders of the Laborers' International Union of North America, AFL–CIO ("Mail Handlers"), and the Atlanta Metro Area Local ("Metro"), affiliated with the American Postal Workers Union, AFL–CIO ("APWU") represented the employees. The Unions filed grievances with the National Labor Relations Board ("NLRB") on behalf of the employees.[1] In the course of preparing the grievances, the Unions discovered that some supervisors had been involved in the gambling activities. Consequently, the Unions requested that the Post Office provide them with information regarding the disciplining of supervisors arising out of the investigation into the gambling activities. The APWU, through Metro, requested this information to establish that the disciplinary actions taken against the bargaining unit employees were "harsh, punitive, disparate and not for just cause." The Mail Handlers, through Local 310, asserted that the information was necessary to show that the Post Office had engaged in disparate treatment of unit employees. The Post Office refused to supply the Unions with the requested information.

## PROCEDURAL HISTORY

Each union filed charges with the NLRB against the Post Office alleging unfair labor practices. The General Counsel of the NLRB issued an order consolidating the cases and issued a consolidated complaint against the Post Office alleging a violation of section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"). The Post Office answered and thereafter filed a motion for summary judgment. The General Counsel responded and also moved for summary judgment. On July 19, 1988, the

---

1. Local 310 and Metro are not bargaining agents of the Mail Handlers and APWU for the purpose of processing grievances, but are, instead, the contractually authorized agents of the APWU and Mail Handlers. In this regard, the "Unions," as used in this opinion, refers collectively to the APWU and Mail Handlers and/or their affiliated locals, Metro and Local 310.

NLRB granted General Counsel's motion for summary judgment. The NLRB found that the Post Office had violated the NLRA as alleged and issued an order requiring the unconditional release of the requested information.

## CONTENTIONS

The Post Office contends that the NLRB erroneously concluded that the requested information is relevant; thus, it was error to grant summary judgment in favor of the General Counsel. The NLRB, on the other hand, contends that the requested information is relevant; thus, summary judgment was appropriate.

## ISSUE

We must determine whether information concerning the disciplining of supervisors is relevant to the issue of disparate or otherwise unjust treatment of the bargaining unit employees under the applicable collective bargaining agreement.

## DISCUSSION

 Section 8(a)(5) of the National Labor Relations Act (29 U.S.C. § 158(a)(5)) makes it an unfair labor practice for an employer to "refuse to bargain collectively with representatives of [its] employees...." In this regard, it is well established that under the NLRA, an employer has a duty "to provide information that is needed by the bargaining representative for the proper performance of its duties." *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967). This obligation "unquestionably extends beyond the period of contract and applies to labor-management relations during the term of the agreement." *NLRB v. Acme Industrial Co.*, 385 U.S. at 436, 87 S.Ct. at 568. Accordingly, an employer's failure to provide relevant information concerning the evaluation or processing of a grievance constitutes a violation of the NLRA. *See Acme Industrial; C & P Telephone Co. v. NLRB*, 687 F.2d 633, 635–36 (2d Cir.1982). The duty to furnish information turns upon "the cir-

cumstances of the particular case." *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 153–54, 76 S.Ct. 753, 756, 100 L.Ed. 1027 (1956). The key question in determining whether information must be produced is "one of relevance." *Emeryville Research Center, Shell Development Co. v. NLRB*, 441 F.2d 880, 883 (9th Cir.1971). Information that pertains to employees in the bargaining unit is presumptively relevant. *NLRB v. Rockwell–Standard Corp.*, 410 F.2d 953 (6th Cir.1969). Conversely, information concerning non-unit employees, including supervisory personnel, does not enjoy a presumption of relevance, and it is incumbent upon the requesting party to prove relevance. *NLRB v. Jaggars–Chiles–Stovall, Inc.*, 639 F.2d 1344, 1347 (5th Cir.), *cert. denied* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981). In determining the relevance of the requested information, relating to non-unit employees, a liberal discovery-type standard is employed. *NLRB v. Acme Industrial Co.*, 385 U.S. at 437, 87 S.Ct. at 568 (1967). The NLRB need not decide the merits of the underlying dispute for which the information is being sought. *NLRB v. Acme Industrial Co.*, 385 U.S. at 437–39, 87 S.Ct. at 568–69. Rather, the NLRB need only find a "probability that the desired information [is] relevant, and that it would be of use to the union in carrying out its statutory desires and responsibilities." *NLRB v. Acme Industrial Co.*, 385 U.S. at 437, 87 S.Ct. at 568.

In order to sustain a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in a light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). Since the facts in this case are not in dispute, the NLRB can prevail by demonstrating that it is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Thus, if we conclude that, based on the facts, the requested information is relevant, we must affirm the NLRB's decision. Although we are not bound by the NLRB's decision, it is nevertheless "entitled to considerable def-

erence." *NLRB v. International Assoc. of Bridge*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978).

In this case, the Unions argue that information concerning the discipline given supervisors for breaching of the Post Office's regulations prohibiting gambling has some bearing on their grievances alleging harsh, unjust, and disparate treatment of unit employees for violating the same regulations. The Post Office, on the other hand, responds by arguing that the supervisors and unit employees have different responsibilities; therefore, they are not similarly situated for purposes of discipline. Thus, the Post Office asserts that the discipline it imposed upon supervisors for violating the anti-gambling regulation is not relevant to whether the discipline it imposed upon the unit employees was harsh, unjust, or disparate. Moreover, the Post Office argues that even if the information is relevant, the Post Office is not required to disclose such information because of the confidential and privileged nature of the information.

It is undisputed that the restriction on gambling activity applies equally to supervisors and unit employees.[2] The Post Office, however, argues that legitimate reasons exist for imposing different degrees of discipline on supervisors and unit employees for similar conduct. According to the Post Office, because supervisors have increased responsibilities and powers, information concerning supervisory discipline is not comparable to the discipline given the unit employees. Thus, the Post Office asserts, information concerning supervisory discipline is not relevant to the issue of disparate or unjust treatment under the collective bargaining agreement.

First, we conclude, as did the NLRB, that given the nature of the rule involved and its applicability to both groups, the different degrees of responsibility accorded each group does not automatically translate into different standards of discipline in this instance, thereby compelling a finding that the requested information has no bearing on grievances.

Second, we reject the Post Office's assertion that under the holding of *Marshall v. Western Grain Co.*, 838 F.2d 1165 (11th Cir.1988), cert. denied, —— U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988), we are required to conclude that the requested information is presumptively not relevant. In *Marshall*, this court concluded that the plaintiffs had not established a racial discrimination claim under section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. The plaintiffs, in *Marshall*, showed that the employer had given severance pay to non-minority non-unit employees while refusing to give severance pay to non-minority unit employees, where the collective bargaining agreement restricted severance pay to the unit employees. On its facts, the *Marshall* case is clearly distinguishable from this case. In stating that unit and non-unit employees are "never" similarly situated, the court in *Marshall* was dealing with a Title VII claim in which one set of rules applied to unit employees (through the collective bargaining agreement) and another set of rules applied to the non-unit employees. In this case, however, the situation is clearly different: the same rule prohibiting gambling activities is applicable to both unit employees and to supervisors. Although the two groups have different degrees of responsibilities, the one rule prohibiting gambling activities applies to both groups. Clearly, the requested information potentially has "some bearing" on whether the unit employees were harshly, unjustly, or disparately treated. Furthermore, we note, as did the NLRB, that "[a]rbitrators regularly consider such evidence as relevant in determining whether a unit employee has been disciplined for just cause." *See North Germany Area Council v. Federal Labor Relations Authority*, 805 F.2d 1044, 1048 (D.C.Cir.1986).

---

**2.** All postal employees, including supervisors, were subject to section 661.56 of the Postal Service Employee and Labor Relations Manual which states in pertinent part:

No employee while on property owned or leased by the Postal Service of the United States or while on duty will participate in any gambling activity.

Third, we agree with the NLRB's finding that the information requested is relevant to the defense of condonation. If the requested information reveals that the supervisors engaged in gambling activities with the bargaining unit employees, the Unions can claim that the Post Office condoned the activity. Once again we note that although the Unions may be unsuccessful in establishing the defense of condonation, the requested information is nevertheless relevant to the condonation defense.

Fourth, we reject the Post Office's argument that even if the information is relevant, it need not be disclosed because it is confidential and involves sensitive information. While we agree that some information need not be disclosed, even though relevant, the information requested in this case does not warrant such protection.[3] The Post Office argues that the information may show that the supervisors violated postal regulations and possibly federal and state law. Furthermore, the Post Office argues, allowing access to such information risks eroding the undivided loyalty it requires of its supervisors. Accordingly, the Post Office fears that supervisors will be less willing to act if the Unions can embarrass and harass the supervisors by gaining access to the type of information here requested. Despite these arguments, we find that keeping the information confidential does not outweigh the Unions' interest in gaining access to the information. Simply because disclosure of the information may reveal that supervisors may have violated state and federal laws against gambling is not a sufficient reason to find that the information must remain confidential. Otherwise, virtually all requests for information on activities leading to disciplinary or potential legal action would be found to have such status. No established public policy against disclosure of the information exists here, as in cases concerning information reflecting confidential assessment by testing professionals on an individual's basic competence.[4] The information requested concerns willful activity which the Post Office has made the basis for discipline and discharge of employees. Furthermore, the Post Office does not assert that supervisors expected the requested information to remain confidential, or that the Post Office made a commitment to the supervisors to keep the information confidential.[5]

Fifth, we reject the Post Office's assertion that disclosure of the requested information threatens the Post Office's strong interest in preserving supervisors' loyalty. As the NLRB noted, the unit employees who participated in the prohibited activities were already aware of the supervisors' involvement. Moreover, through their actions, the supervisors who engaged in the prohibited conduct have already compromised their loyalty to the Post Office.

■ Finally, we reject the Post Office's argument that it need not disclose the information because it is restricted from doing so under the Privacy Act of 1974, 5 U.S.C. § 552a. The Post Office admits that the requested information is stored in two record systems which provide for disclosure pursuant to the routine uses exception in the Privacy Act. The Post Office also admits that one of the routine uses which both record systems provide for is the furnishing of records to labor organizations when the organization needs the

---

**3.** *See Detroit Edison Co. v. NLRB,* 440 U.S. 301, 318, 99 S.Ct. 1123, 1132–33, 59 L.Ed.2d 333 (1979) (where the Court rejected the NLRB's assertion that relevant information must always predominate over all other interest).

**4.** *See NLRB v. Detroit Edison Co.,* 440 U.S. 301, 318, 99 S.Ct. 1123, 1132–33, 59 L.Ed.2d 333 (1979) (in denying a request for psychological test results the Court took judicial notice of established professional and governmental policies against disclosure and sensitivity of any human being to disclosure of psychological in-

formation that may be taken to bear on the person's basic competence).

**5.** *See Salt River Valley v. NLRB,* 769 F.2d 639, 642 (9th Cir.1985) (in requiring disclosure of employee's personnel file, the court relied on employee's lack of expectation of confidentiality and employer's lack of commitment to employees that information would remain confidential). *See Detroit Edison Co.,* 440 U.S. at 306, 99 S.Ct. at 1126–27 (employer made express commitment to employees that information would remain confidential).

records to perform properly its duties as the collective bargaining representative of the postal employees in an appropriate unit. Based on our finding that the requested information is relevant and given that the very use for which the information has been requested is defined as a routine use for the information, we hold that the Privacy Act does not prevent disclosure of the information.

## CONCLUSION

We hold that the requested information concerning supervisory discipline arising from the gambling activity is relevant to the grievances. The National Labor Relations Board's order is enforced.

ENFORCED.