United States Court of Appeals,

Fifth Circuit.

No. 97-60006.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED STATES POSTAL SERVICE, Respondent.

Nov. 18, 1997.

Application for Enforcement of an order of the National Labor Relations Board.

Before DeMOSS and DENNIS, Circuit Judges, and LEE,[*] District Judge.

TOM S. LEE, District Judge:

The National Labor Relations Board (NLRB or Board) applies for enforcement of its August 28, 1996 order by which it adopted the finding of an administrative law judge that the United States Postal Service (Service) violated sections 8(a)(5) and (1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(5) and (1), by refusing the request of American Postal Workers Union Local 5188, AFL-CIO (Union), for records which the Union deemed necessary for and relevant to the proper performance of its collective bargaining duties. Consequently, the Board ordered the Service to furnish the Union with the requested materials. Finding error, we decline to enforce the order and remand for proceedings consistent with this opinion.

*Background*

In August 1994 and again in February 1995, the Union filed

---

[*]District Judge of the Southern District of Mississippi, sitting by designation.

grievances on behalf of Dawn Hamilton, a union member and part-time flexible clerk employed by the Service at the Lake Jackson, Texas Post Office, challenging the Service's decision to assign Bonnie Powell, a less-senior part-time flexible clerk (and also a union member), to relief-window clerk duties, and the Service's later decision to schedule Powell, and not Hamilton, for relief-window training. The Union took the position that Powell's assignment for training violated the Service's seniority rule and its training policies, and violated the "rule of reason" in light of Hamilton's superior training, experience and capabilities and Powell's deficiencies. The Union said it could not find a "logical or sound business reason" to promote Powell, and alleged that Powell's promotion was motivated by "favoritism, cronyism, managerial stubbornness and deal making."

Prior to filing the second grievance, Union steward Alan S. Harrell had requested that the Service provide him with copies of Hamilton's and Powell's personnel records (excluding medical records) so that the Union could determine "whether a grievance exists and, if so," to enable the Union "to determine the relevancy of the documents to the grievance." The Service denied the Union's blanket request for disclosure, but offered to allow each employee to review her own file in the presence of a Union steward. Harrell made an oral grievance protesting the Service's "[r]efusal to provide information necessary to file grievances," which Lake Jackson Postmaster Michael Heitmann denied, advising Harrell that while the Service was not obligated to furnish the entire file, a

more specific request for information would be considered.

In the Union's position statement filed in relation to Hamilton's training grievance, the Union complained of the Service's failure to provide the requested personnel files, which the Union asserted not only gave the appearance of impropriety but was also "an attempt to stonewall the union, and an attempt to thwart Mrs. Hamilton from filing this grievance." Postmaster Heitmann denied Hamilton's grievance, informing Harrell that the Service would not furnish copies of the documents in support of his "fishing expedition." Subsequently, Harrell filed a grievance based on the Service's refusal to provide the Union with the requested information. In connection with that grievance, Harrell sought to obtain from the Service copies of all documents used by the Service in denying Hamilton's grievance. This grievance was denied, with Postmaster Heitmann stating:

> Management must again require that you be more specific in your request as it would be next to impossible to provide you with a copy of every document used, for example: The National Agreement, acquired knowledge etc.

With the exception of the Hamilton training grievance, which was not appealed to arbitration, each of these grievances was pending arbitration at the time of the hearing by the administrative law judge (ALJ).

Following the hearing, the ALJ concluded that contrary to the Service's assertion, the Privacy Act of 1974, 5 U.S.C. § 522a, did not prohibit the Service's disclosure to the Union of copies of the contents of Hamilton's and Powell's official personnel files since, in recognition of its NLRA-imposed duty, the Service had

3

specifically excepted from Privacy Act coverage records needed by the Union to perform its collective bargaining duties, and since, in the ALJ's opinion, the Union had demonstrated its need for the records. Accordingly, the ALJ ordered that the Service "cease and desist from ... [r]efusing to bargain collectively with the Union ... by refusing to furnish it with copies of the official personnel files (less medical records)" of Hamilton and Powell, and he directed that the Service furnish the Union with copies of those files. The Board adopted the ALJ's recommended order with only minor modifications.

## Discussion

"The duty to bargain collectively, imposed by § 8(a)(5) of the [NLRA], includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employee's bargaining representative." *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 303, 99 S.Ct. 1123, 1125, 59 L.Ed.2d 333 (1979). *See also NLRB v. CJC Holdings, Inc.,* 97 F.3d 114, 117 (5th Cir.1996) (same). Thus, if the employer refuses "to furnish information relevant to a union's ... administration of a collective bargaining agreement," such refusal " "may constitute a breach of the employer's duty to bargain in good faith'." *CJC Holdings,* 97 F.3d at 117 (quoting *NLRB v. Leonard B. Hebert, Jr. & Co., Inc.,* 696 F.2d 1120, 1124 (5th Cir.), *cert. denied,* 464 U.S. 817, 104 S.Ct. 76, 78 L.Ed.2d 88 (1983)). As recognized in *Hebert,*

> the key inquiry is whether the information sought by the Union is relevant to its duties. The Supreme Court has adopted a liberal, discovery-type standard by which relevancy of requested information is to be judged. Information intrinsic

4

to the employer-union relationship, such as that pertaining to wages and other financial benefits, is considered presumptively relevant, with the employer having the burden of showing irrelevance.

The Service, however, unlike private employers covered by the NLRA, is also subject to the Privacy Act of 1974, 5 U.S.C. § 522a. *See* 39 U.S.C. § 410(b)(1). The Privacy Act, in contrast to the NLRA's liberal relevance standard, prohibits the disclosure of employee information, absent employee consent, unless a specified exception is met. One such exception, the "routine use" exception, allows "the use of [a] record for a purpose compatible with the purpose for which it was collected." 5 U.S.C. § 522a(a)(7). Consistent with this authorization, the Service has promulgated "routine use" exceptions, including Routine Use "m", which provides:

m. Disclosure to Labor Organizations

Pursuant to the National Labor Relations Act, records from this system may be furnished to a labor organization when needed by that organization to perform properly its duties as the collective bargaining representative of postal employees in an appropriate bargaining unit.

In the instant case, the Board considered whether, pursuant to Routine Use "m", the Union needed the requested records, an inquiry which it deemed to be "similar to asking whether the request was for "relevant' items." And though viewing Harrell's purpose in requesting the entire files as a "fishing expedition"—finding that he was "seeking production for discovery"—the Board, nevertheless concluded that the entire contents of the files were "needed."[1]

---

[1]In its opinion, the Board described the Union's request for information as follows:

The Board explained:

> As the Union, at least arguably under the contract may grieve on the basis that a more logical choice was available to management, it seems clear that the Union "needed" the copies of the official personnel files (OPFs) of PTFs Powell and Hamilton. I so find. Always casting the burden on the Union to name specific documents, management never made any effort to accommodate both its interests and that of the Union by assuming the burden of classifying specific items, if any, as confidential. Postal Service has that burden and also the burden to negotiate with Union about such confidential classification in an effort to balance the interests of both the Postal Service and the Union. *Postal Service,* 309 N.L.R.B. 309, 312; *Postal Service,* 307 N.L.R.B. 429, 434, 1992 WL 92964 (1992).

> Because Postal Service was not authorized under the Privacy Act to withhold production of documents generally, I find as alleged, that Respondent Postal Service violated 29 U.S.C. § 158(a)(5) when, on February 7, 1995, it refused to supply the Union, in accordance with the Union's written request dated February 6, 1995, copies (excluding medical records) of the OPF's of PTF clerks Bonnie Powell and Dawn Hamilton. (Citations omitted).

The standard of review of Board decisions is

---

Harrell explains his request for copies of the entire personnel files (minus medical records) as being what he needs to analyze Postal Service's decision process in order to determine whether Postal Service made "the most rational choice." Harrell describes this as the "rule of reason", and he asserts that the CBA allows for such an approach even though the three-word term is not itself specified in the contract.... Harrell acknowledges that, at the February 24 Step 2 meeting of the "core" grievance, Postmaster Heitmann protested that Harrell was simply on a "fishing expectation for information." In fact, Harrell's own description of his purpose demonstrates that a fishing expedition is exactly what he is seeking. Quite simply, Harrell is seeking production for discovery. Thus, Harrell testified that, on receiving copies of the personnel files (less the medical records), he would look for anything that would support the Union's position that PTF Hamilton would be the superior choice over PTF Powell. Harrell wants to be able to argue that he has reviewed the (copies of) the personnel files, and that the files do not support management's decision.

6

well-established.  Its findings of facts must be upheld if they are supported by substantial evidence on the record considered as a whole.[2]  29 U.S.C. § 160(e);  *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).  Likewise, the Board's application of law to fact is reviewed under the substantial deference standard.  *NLRB v. United Ins. Co.,* 390 U.S. 254, 260, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968).  Additionally, "[t]he Board's determination of relevance of the information sought in a particular case must be given great weight by the courts, if only because it is a finding on a mixed question of law and fact, "which is within the particular expertise of the Board'."  *NLRB v. Brazos Elec. Power Coop.,* 615 F.2d 1100, 1101 (5th Cir.1980);  *E.I. DuPont de Nemours & Co. v. NLRB,* 744 F.2d 536, 538 (6th Cir.1984) (per curiam).

Turning to the merits, while the parties devote much attention to the correct interpretation of Routine Use "m", it is clear that the ALJ correctly concluded that the inquiry into whether the records were "needed" for purposes of Routine Use "m" is similar to the inquiry for determining whether records are

---

[2]Although the Service states that it does not quarrel with the Board's finding of facts, it obviously disputes the Board's conclusion that the entire files were either relevant and needed by the Union.  The Service asserts that the following are factual findings that the Board did not make but should have:  (1) the Union representative had seen and thus was aware of the list of items which are contained in postal personnel files;  (2) the Union representative acknowledged that the home addresses and information about Hamilton's and Powell's life insurance coverage would not have assisted him or have been relevant to the issues in the case; and (3) the Service offered to allow inspection of the employees' personnel files upon written release by the employees.

"relevant" and thus subject to disclosure pursuant to the NLRA.[3]
*See NLRB v. United States Postal Serv.,* 888 F.2d 1568, 1572-73
(11th Cir.1989) (concluding that "the Privacy Act did not prevent
disclosure" because Board determined that the requested information
was relevant); *NLRB v. United States Postal Serv.,* 841 F.2d 141,
144-45 n. 3 (6th Cir.1988) (noting that "if the [NLRA] requires the
Postal Service to supply the desired information, the
unconsented-to disclosure of such would fall within the "routine
use' exception to the Privacy Act"); *United States Postal Serv.,*
301 N.L.R.B. 709, 713 (1991), *enforced,* 980 F.2d 724 (3rd Cir.1992)
(finding that requested information was relevant under the NLRA,
and that accordingly, "the disclosure of such information is
mandated by the Privacy Act because its use is precisely for such
purposes recognized by the Privacy Act—the ability of the Union to
properly perform its duties as the collective bargaining
representative of the unit employees"); *see also United States
Postal Serv. v. National Ass'n of Letter Carriers,* 9 F.3d 138, 148

---

[3]The Service, citing *Hi-Craft Clothing v. NLRB,* 660 F.2d 910,
914-915 (3d Cir.1981), urges that the court consider de novo the
Board's interpretation of Routine Use "m". The court concludes
that, unlike the situation presented in *Hi-Craft,* interpretation of
Routine Use "m" is not an instance "in which the court [has]
special competence"; that is, analysis of Routine Use "m" requires
interpretation of neither the common law nor constitutional law and
therefore, deference to the Board's reasonable interpretation is
appropriate.

Additionally, despite the fact that the Service argues
that "relevance" and "need" are not equivalent terms and that
"relevance" has a broader connotation than "need," it has not
suggested that there was any information which would have been
relevant that would not have also have been needed.
Considering this, de novo review would in the end merely be an
academic exercise, having no effect on the outcome.

(D.C.Cir.1993) (plurality opinion). Considering whether the Board's determination that the information sought by the Union was "needed" is supported by substantial evidence, we conclude that it is not.[4]

The Union conceded to the ALJ that at least some of the information contained in the personnel files would not be relevant[5] and the NLRA itself does not deem certain other information which would be in the files, i.e. social security numbers, to be presumptively relevant, *see United States Postal Serv.,* 307 N.L.R.B. 170 (1992) (concluding that social security numbers were not presumptively relevant, and that Union had "failed to show any special circumstances warranting" their disclosure); and

---

[4]The Board, observing that the Service no longer disputes that the requested information was "relevant to the Union's grievance handling functions," contends that the record contains substantial evidence in support of the Board's determination of relevance. It is clear that while the Service has perhaps impliedly agreed that some of the documents in the files would be relevant, it has not agreed that the entire contents of the files are relevant. The Service argued in its initial brief that the Union failed to show how *all* the information in the employees' files, i.e., social security numbers, thrift savings plan participation information, garnishment records, was facially relevant to the Union's "rule of reason" argument.

[5]For example, during cross examination at the hearing before the ALJ, Union representative Harrell conceded that obtaining the home addresses of the two employees or the amount of life insurance they had selected would not have assisted him in presenting the Union's grievance. As pointed out by the Service, the Board did not make this factual finding. It is clear, however, that these facts alone are sufficient to overcome any presumption of relevancy with regard to the entirety of the employees' files. *NLRB v. United States Postal Serv.,* 888 F.2d 1568, 1570 (11th Cir.1988) ("Information that pertains to employees in the bargaining unit is presumptively relevant."); *Providence Hosp. v. NLRB,* 93 F.3d 1012, 1017 (1st Cir.1996) (recognizing presumption of relevance with regard to information pertaining to members of bargaining unit and providing that employer may rebut this presumption).

considering that the Union representative acknowledged that the purpose of the entire endeavor was simply to peruse the Service's file, the Board's conclusion that the entirety of the personnel files was relevant and/or needed is not supported by substantial evidence. *See NLRB v. George Koch Sons, Inc.,* 950 F.2d 1324, 1332 (7th Cir.1991) ("Although the relevance standard is a liberal standard, the courts will not allow the union to go on unfounded fishing expeditions."). Furthermore, as the Service has admitted that some of the information contained in the employees' files was relevant to the Union's collective bargaining duties, and in fact, furnished certain of that information to the Union representative, the Board's conclusion that the Service never made any effort to accommodate the Union's interest is also not supported by substantial evidence. However, given that the employees' personnel files admittedly contained information relevant to the Union's collective bargaining duties, we conclude that the case should be remanded to allow the Board to consider whether requiring the parties to engage in accommodative bargaining at this stage of the litigation would effectuate the policies of the NLRA.[6] *See* 29

---

[6]The Service's contention that the "death" of the core grievance in this case obviates any need for continued bargaining is unavailing, because as the Board points out, "[t]he relevance of requested information must be determined by the circumstances that exist at the time the union makes the request, not by the circumstances that obtain at the time an agency or court finally vindicates the union's right to divulgement." *Providence Hosp. v. NLRB,* 93 F.3d 1012, 1020 (1st Cir.1996); *see also NLRB v. Arkansas Rice Growers Coop. Ass'n,* 400 F.2d 565, 567 (8th Cir.1968); *Mary Thompson Hosp.,* 296 N.L.R.B. 1245, 1250, *enforced,* 943 F.2d 741 (7th Cir.1991). *But see NLRB v. United States Postal Serv.,* 18 F.3d 1089, 1104 (3d Cir.1994).

U.S.C. § 160(c) (empowering Board "to take such affirmative action ... as will effectuate the policies of this subchapter").

*Conclusion*

Finding that the Board's conclusions that the entirety of the employees' personnel files was relevant and that the Service never made any effort to accommodate both its interests and those of the Union are not supported by substantial evidence, we deny enforcement of the order. Furthermore, given the relevancy of portions of the employee personnel files, we remand the case to the Board for reconsideration consistent with this opinion.