# United States Court of Appeals
## For the First Circuit

No. 11-1225

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

APPLICATION FOR ENFORCEMENT OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD

Before

Lynch, <u>Chief Judge</u>
Boudin and Stahl, <u>Circuit Judges</u>.

<u>Nicole Lancia</u>, Attorney, with whom <u>Usha Dheenan</u>, Supervisory Attorney, National Labor Relations Board, was on brief for petitioner.
<u>Stephan J. Boardman</u>, Counsel of Record, with whom <u>David C. Belt</u>, Acting Chief Counsel, and <u>Peter J. Henry</u>, Senior Counsel, U.S. Postal Service, were on brief for respondent.

October 27, 2011

**LYNCH**, <u>Chief Judge</u>.  This case involves a clash between two federal entities and two different important values.  The National Labor Relations Act (NLRA) § 8(a)(5), 29 U.S.C. § 158(a)(5), imposes on the United States Postal Service (USPS) the duty to bargain collectively, which includes the obligation to furnish relevant information to a labor union for purposes of collective bargaining.  <u>NLRB</u> v. <u>Acme Indus. Co.</u>, 385 U.S. 432, 435-36 (1967).  The Privacy Act, 5 U.S.C. § 552a(b), meanwhile, imposes on USPS the obligation to protect the privacy of its employees' personal information unless they consent to disclosure.

The National Labor Relations Board found that USPS committed an unfair labor practice under section 8(a)(1) and (a)(5) by refusing to provide the National Postal Mailhandlers Union, Local 313, with the personal aptitude test scores of twenty-two USPS employees unless the Union first obtained their consent.  Both sides agree that the test scores are relevant to the Union for collective bargaining purposes and could be disclosed with appropriate employee consent.

The Board's unfair labor practice finding, on which it seeks enforcement, rests on its reasoning that no privacy interests are at stake in this case and so no balancing of interests was required as between the Union's interest in the information and the employees' interest in privacy.  USPS argues that its employees

have a substantial privacy interest in their test scores, recognized under federal law.

We vacate and remand the Board's decision, and hold that the twenty-two USPS employees have a legitimate and substantial privacy interest in their test scores and that the Board, accordingly, is required to engage in the balancing of interests omitted from its original analysis.

## I.

USPS requires all applicants for its mail handler position to take psychological aptitude test, "Test 473." This test has been developed by USPS's own industrial psychologists and has proven an effective way of measuring USPS applicants' job performance potential in certain job practice areas. Test 473 is designed to measure the test taker's cognitive skills and general mental ability, as well as his or her personal characteristics, as they relate to "conscientiousness, interpersonal skills, professional service orientation, self-management, and dealing with work pressures and demands."[1]

---

[1] The test is divided into four parts. The first three parts measure the test taker's cognitive skills, while the fourth part measures personal characteristics. The substantive contents of these parts are as follows: Part A consists of address checking exercises, requiring the examinee to compare two lists of addresses and identify discrepancies between the lists. Part B requires examinees to complete a form by assigning information to its proper location within the form. Part C consists of a coding exercise in two subparts, whereby examinees must assign the proper code to various addresses, first with a coding guide on hand for reference, and subsequently without that guide. Finally, Part D consists of

Passing scores on Test 473 range from 70 to 100 points. Once the test is scored, an applicant who is eligible for them may receive an additional five to ten points as a veteran's preference. The combined test score and veteran's preference (if any) are added to reach the applicant's "final rating." After calculating each applicant's final rating, USPS places each applicant's name, date of birth, standing, exam date, applicable veteran's points, basic Test 473 score, and final combined rating onto the official USPS hiring Register for the year in question.

In 2007, USPS announced job openings for mail handler positions in the Caribbean District, including several openings in the San Juan Office in Puerto Rico. Some 9,000 applicants subsequently took Test 473; 8,000 of these passed and were placed on USPS's 2007 hiring Register. Under standard USPS procedure, human resources considered the three top-rated applicants for each job opening in the District. The San Juan Post Office hired twenty-two new employees from these applicants.

The National Postal Mailhandlers Union, Local 313, represents Postal Service workers and is the exclusive bargaining agent for mail handlers in the Caribbean District. Under USPS regulations, and the current collective-bargaining agreement

236 questions designed to assess a test taker's personal characteristics and experiences. Example questions include: "You plan things carefully in advance: a) very often; b) often; c) sometimes; d) rarely," and "What type of work do you like the least?"

-4-

between USPS and Local 313, USPS must compute its new employees' seniority rankings under "properly established past principles, rules and instructions."  After successfully completing a 90-day trial period, new employees are assigned a seniority rank, which corresponds to their first day of work.

Sometime after the San Juan Office assigned seniority rankings to its group of twenty-two new employees, several members of this group who were veterans approached the President of Local 313 with an unfair employment complaint.  They raised their concern that within the group of new employees, non-veteran employees had begun work earlier -- and thus received higher seniority rankings -- than veteran employees, despite the fact that the veteran employees had applied for their positions earlier than had the non-veteran employees.  In response to this complaint, the President of Local 313 requested from USPS the 2007 hiring Register, as well as the Register information for the group of twenty-two new employees.[2]

Because the USPS hiring Register identifies applicants' test scores as well as other personal information, its contents are kept strictly confidential by USPS pursuant to the federal Privacy Act.  See 39 C.F.R. § 268.1.  Under the Privacy Act, any

---

[2]  USPS removes applicants from the hiring Register once they have been hired as employees, but the original 2007 Register included the information of all applicants, including the twenty-two ultimately hired by the San Juan Office.

information contained within a federal agency's "system of records"[3] may not be disclosed by any means of communication, to any person or entity except upon "prior written consent of[] the individual to whom the record pertains", or unless the disclosure falls within one of several enumerated exceptions. 5 U.S.C. § 552a(b). Of these, the Privacy Act's "routine use" exception permits disclosure of a record for a purpose "compatible with the purpose for which it was collected."[4] 5 U.S.C. § 552a(b)(3), (a)(7).

This catch-all exception is limited, however, by the requirement that agencies define specific routine uses and publish these, subject to notice and comment, in the Federal Register in advance of invoking them. 5 U.S.C. § 552a(e)(4).

USPS has published a list of eleven routine uses, under which USPS employee records may be disclosed. Privacy Act of 1974, System of Records, 70 Fed. Reg. 22,516, 22,521 (Apr. 29, 2005). Included in this list is a qualified exception for disclosure to labor organizations, "[a]s required by applicable law . . . when

---

[3] The Privacy Act defines "record" to mean any instance of, grouping or collection of information about an individual containing that individual's name, identifying number, symbol, or any other identifiable particular assigned to the individual that is maintained by a federal agency. 5 U.S.C. § 552a(a)(4).

[4] It is far from clear that the purpose for which these test scores were collected is inherently "compatible" with disclosure in this instance. But the parties have not argued this point and instead have focused on the USPS published list of routine uses.

needed by that organization to perform its duties as the collective bargaining representative of [the USPS] employees in an appropriate bargaining unit."  Id.

Under these regulations, and due to its concerns about the privacy of its applicants and employees, USPS elected not to provide Local 313 with the requested information.  USPS offered to release the information contained in the 2007 Register with respect to any individual from whom Local 313 obtained consent.

Local 313 rejected this offer, as well as USPS's offer to supply a redacted version of the Register, and filed an unfair labor practice charge under section 8(a)(1) and (a)(5) of the NLRA. The Administrative Law Judge found in favor of Local 313, and ordered USPS to furnish the Union with the complete 2007 hiring Register.  U.S. Postal Serv., Case 24-CA-10805, 2008 WL 3286174 (ALJ Aug. 5, 2008).

The National Labor Relations Board affirmed the judgment and a portion of the Administrative Law Judge's Order, on different grounds, but narrowed the Order, directing USPS to furnish the Union with the Register information for only the twenty-two applicants USPS actually hired.  U.S. Postal Serv., 356 N.L.R.B. No. 75, 2011 WL 39985 (Jan. 5, 2011).

USPS argued before the Administrative Law Judge and the Board that federal law permitted it to condition disclosure of employee test scores on employee consent.  It argued that the

Privacy Act's routine use exception allows disclosure pursuant to the NLRA only where <u>required</u> by law.  Because the Supreme Court held in <u>Detroit Edison Co.</u> v. <u>NLRB</u>, 440 U.S. 301 (1979), that the NLRA does not require unconditional disclosure of psychological aptitude test scores, USPS argued that it was not obligated to release employee test scores unconditionally under the routine use exception.

The Board rejected this argument on the grounds that the underlying confidentiality interest raised by USPS failed.  The Board distinguished <u>Detroit Edison</u> on the grounds that the employer in that case had made an express promise of confidentiality to its employees.  It reasoned that USPS, quite the opposite from promising employees that it would keep their test scores confidential, provided employees with several Privacy Act notices warning them that their scores could be released to a labor union when needed by the union for collective bargaining.  <u>U.S. Postal Serv.</u>, 2011 WL 39985, at *7.  The employees, the Board found, thus had "had no legitimate expectation that their test results would remain confidential."  <u>Id.</u>

The Board reasoned that employees must receive an explicit promise of confidentiality in their scores from their employer to acquire an expectation of privacy.  <u>Id.</u>  As a result, the Board did not engage in any further balancing of the interests

or address whether consent was a reasonable condition of disclosure.  Id.

## II.

Because the ultimate issue is one of proper interpretation of a Supreme Court opinion, our review is de novo. With regard to the Board's interpretation of Detroit Edison, a court of appeals is "not obligated to defer to an agency's interpretation of Supreme Court precedent under Chevron or any other principle." N.Y., N.Y., LLC v. NLRB, 313 F.3d 585, 590 (D.C. Cir. 2002) (quoting Univ. of Great Falls v. NLRB, 278 F.3d 1335, 1341 (D.C. Cir. 2002)) (internal quotation mark omitted); see also Providence Hosp. v. NLRB, 93 F.3d 1012, 1016 (1st Cir. 1996) ("As to matters of law, appellate review is plenary.").

USPS does not dispute that an employer's duty to bargain collectively under section 8(a)(5) of the NLRA unquestionably includes "a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." Detroit Edison Co., 440 U.S. at 303; see also Acme Indus. Co., 385 U.S. at 435-36.

Where, as here, the relevance of the requested information is not in question, an employer, nevertheless, is not automatically obliged to disclose "all the information in the manner requested." Detroit Edison, 440 U.S. at 314. Rather, an employer's duty to disclose information under section 8(a)(5), as

-9-

well as "the type of disclosure" necessary to satisfy this duty, id. at 315, turns on "the circumstances of the particular case," id. at 314 (quoting NLRB v. Truitt Mfg. Co., 351 U.S. 149, 153 (1956)).  In evaluating these circumstances, there is no "absolute rule" that a union's need for relevant information must always trump all other interests.  Id. at 318.

The Supreme Court has held that a union's interest in relevant information must accommodate other, competing interests, such as privacy.  Id.  This court held in NLRB v. New Eng. Newspapers, Inc., 856 F.2d 409 (1st Cir. 1988), that "a balancing is required" as between "the need to know by the union to allow it to effectively carry out its functions as bargaining representative of the employees," and an "employer's legitimate right to privacy, in which the relevancy of the information sought and the safeguards provided to the employer to protect its privacy interest are the principal elements to be considered."  Id. at 413.

In Detroit Edison, the Supreme Court held, on the facts there, that the confidentiality interest employees have in their aptitude test scores warrants an employer's refusal to release these scores to a union unless the union first obtains employee consent.

The employer in Detroit Edison had administered a "psychological aptitude test[]", which measured test takers' cognitive skills.  440 U.S. at 304.  In order to address a

-10-

grievance related to unfair promotions based on this aptitude test, the local union had requested the test questions, the actual answer sheets, and the final test scores of all employees who had applied for a particular promotion. The employer refused to disclose the test scores and answer sheets absent employee consent in order to protect the privacy of its employees. Id. at 317.

The Supreme Court assumed the relevance of the scores to the union's investigation and processing of the grievance, but nevertheless held that the company's offer to disclose the test scores upon the written consent of its employees "satisfied [the company's] statutory obligations" under the NLRA. Id. at 317.

The Court based its evaluation of the competing interests at stake in the case on three different factors: the interest of the employees in confidentiality, the burden placed upon the union by conditional disclosure, and whether there was evidence that the company was using employee privacy as a pretext to avoid its statutory obligations to bargain collectively. Id. at 319-20.

First and foremost, the Court took judicial notice of "[t]he sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence," id. at 318, and found the employees' interest in confidentiality "undeniabl[e]," id. at 304. It noted that an individual's "interest in preserving the confidentiality" of sensitive, personal information "has been given forceful recognition in both federal

-11-

and state legislation," and cited the federal Privacy Act as one manifestation of this concern. Id. at 318 n.16 (citing Privacy Act of 1974, 5 U.S.C. § 552a).

The Court noted that multiple other courts had recognized that important privacy interests may limit unconditional disclosure of sensitive personal information to unions even where the information is relevant to collective bargaining. See id. at 318 n.14 (collecting cases); id. at 318 n.16 (citing Local 2047, Am. Fed'n of Gov't Emps. v. Def. Gen. Supply Ctr., 423 F. Supp. 481 (E.D. Va. 1976), aff'd, 573 F.2d 184 (4th Cir. 1978) (per curiam) (holding that the Privacy Act constituted a valid defense to unconsented-to disclosure of employee records to a union requesting those records pursuant to the terms of a collective-bargaining agreement)).

The Court also found that the employer's condition that the union obtain employee consent before disclosure placed a "minimal burden" upon the union, and noted that the employer's asserted interest in confidentiality on behalf of its employees was real and not merely an attempt to frustrate the union or avoid its legal obligation to bargain collectively. Id. at 319.

After evaluating these factors under the "circumstances of the particular case," the Court held that "any possible impairment of function of the Union . . . is more than justified by the interests served in conditioning the disclosure of the test

scores upon [consent]," id., and that the employer did not violate its statutory obligations under the NLRA by "resisting an unconsented-to disclosure," id. at 320.

III.

In the present dispute, the Board attempted to distinguish Detroit Edison on its facts. The Board found Detroit Edison inapplicable because the employer in that case had expressly promised employees that it would maintain the confidentiality of their test scores.[5] The Board concluded that USPS employees, far from anticipating that their scores would be kept confidential, should have expected their scores would or could be disclosed and therefore had "no legitimate confidentiality interest" in their scores. U.S. Postal Serv., 2011 WL 39985, at *7.

The Board based this conclusion on USPS's publicly available Guide to Privacy and the Freedom of Information Act, which details USPS's obligations under that Act, as well as two Privacy Act notices contained in the materials distributed by USPS to applicants for employment: the 2007 USPS mail handler position application packet and the answer form to Test 473. Both of these notices informed applicants that the Privacy Act applied to any

---

[5]   The Board has recognized in its decisions that unions may be required to accommodate employers' restrictions on disclosure of certain categories of information, which, if disclosed, "would reveal, contrary to promises or reasonable expectations, highly person information." U.S. Postal Serv., 356 N.L.R.B. 75, 2011 WL 39985, at *6 (Jan. 5 2011) (citing Detroit Newspaper Agency, 317 N.L.R.B. 1071, 1073 (1995)).

-13-

personal information they chose to divulge, and elaborated that this personal information would be kept confidential, but could be disclosed "as required by law."

The two notices also referenced USPS's routine use exception to the Privacy Act for disclosure to labor organizations. The application packet's privacy notice stated, "As a routine use, we may only disclose this information as follows: . . . as required by the National Labor Relations Act." A similar notice was repeated on the answer sheet for Test 473: "We may only disclose your information as follows: . . . to labor organizations as required by law." Finally, as the Board noted, USPS's publicly available Guide to Privacy reiterates USPS's obligations under the Privacy Act and reproduces USPS's eleven Standard Routine Uses in full.

The Board concluded that as a result of these notices, any applicant who proceeded to "complete the exam thus had no legitimate confidentiality interest in test results they knew were subject to disclosure to labor organizations." U.S. Postal Serv., 2011 WL 39985, at *7.

With no privacy interest at stake in the case, the Board found Detroit Edison inapplicable and declined to engage in the balancing analysis conducted by the Court in that case. Instead, the Union's interest in the information automatically prevailed.

We hold that the Board erred in its conclusion that USPS employees retained no privacy interests in their aptitude test scores. The Privacy Act notices first reaffirmed to applicants that their information would be kept private, and then alerted them to possible, limited disclosures. The notices did not wipe out all expectations of privacy.

Employees were informed by the notices in the application packet and answer sheet to Test 473 that disclosure could occur under restricted circumstances, governed by federal law. Similarly, USPS's Guide to Privacy explains that the Privacy Act provides the governing framework for disclosure and restricts the release of personal information to specifically defined circumstances.

The notices and Guide to Privacy thus reiterate USPS's obligations under the Privacy Act to keep employee information confidential and to publish any limited exceptions under which information may be disclosed. They specifically reference USPS's routine use exception for disclosure to labor organizations, which provides, "As required by applicable law, records may be furnished to a labor organization when needed by that organization to perform its duties . . . ." 70 Fed. Reg. at 22,521.

This language does not require automatic disclosure of sensitive employee information to unions any more than the NLRA requires such disclosure. The Supreme Court has established that

the NLRA does not require automatic, unconditional release of personally sensitive information in all instances. Detroit Edison, 440 U.S. at 319-20. USPS's routine use exception for labor organizations, accordingly, does not mandate unconditional disclosure in every instance.

Several circuit courts of appeal that have addressed this question have concluded likewise that USPS's routine use exception for disclosure to labor organization permits disclosure of relevant information, but does not mandate such disclosure unconditionally where there is a strong competing interest in privacy. See NLRB v. U.S. Postal Serv., 17 F.3d 1434, 1994 WL 47743, at *3 (4th Cir. 1994) (unpublished) ("A bargaining agent does not have an unfettered right to all information relevant to the performance of its duties. . . . An employer may legitimately refuse to furnish relevant information, such as psychological test results, if it has a well-founded concern for employee privacy that outweighs a union's need for the information." (citing Detroit Edison, 440 U.S. at 314-15, 317-20)); NLRB v. U.S. Postal Serv., 888 F.2d 1568, 1572 & nn.3-4 (11th Cir. 1989) (noting that certain types of employee information "need not be disclosed, even though relevant" to a union, such as "psychological test results" (citing Detroit Edison, 440 U.S. at 318)); see also U.S. Postal Serv., 301 N.L.R.B. 709, 709 & n.2 (1991), enforced, 980 F.2d 724 (3rd Cir. 1992) ("[D]isclosure of information relevant to the Union's proper

-16-

performance of its duties as collective-bargaining representative of unit employees is permitted, rather than mandated, by the Privacy Act.").

Thus, the fact that information may be disclosed "as required by law" does not itself defeat all expectations of privacy, nor does it create an expectation that the information will be disclosed automatically whenever it is relevant to a union.

The Board's determination that the privacy notices eliminated the employees' expectations of privacy misinterprets both the notices and the law. The notices functioned to reiterate USPS's obligations under federal law to keep confidential its employees' personal information save for specific, well-defined exceptions. The exception for disclosure to labor organizations under the NLRA does not provide for unlimited disclosure, and so could not eliminate all expectations of confidentiality in employee test results.

The Supreme Court's analysis in Detroit Edison applies to this case. Here, USPS psychologist Martha Elizabeth Hennen testified that "[t]he research literature in the field of industrial organizational psychology and psychology in general does find that test results . . . relating to cognitive abilities are considered sensitive to . . . examinees." This is due, at least in part, to the "implications that can be drawn from the . . . test results . . . which are indicative of an examinee's basic or core

competence." The interest of the USPS employees in the confidentiality of their aptitude test scores is as great as the interest of Detroit Edison's employees. The Board erred in finding that the employees had "no legitimate expectation that their test results would remain confidential" and in subsequently declining to engage in the balancing of interests analysis required by <u>Detroit Edison</u>.

We hold that the employees had a sufficient confidentiality interest in their test scores here as to require the Board to engage in a balancing of interests analysis, under <u>Detroit Edison</u>, weighing the interests of the Union in the information against the privacy interests of the employees.

Accordingly, we deny the Board's petition for enforcement and remand for further proceedings consistent with this opinion.

It is so ordered. No costs are awarded.