# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 21, 2023
Lyle W. Cayce
Clerk

No. 23-60075
Summary Calendar

_____

Johns Manville Corporation,

*Petitioner/Cross-Respondent*,

*versus*

National Labor Relations Board,

*Respondent/Cross-Petitioner*.

_____

Appeal from the National Labor Relations Board
Agency No. 08-CA-270764

_____

Before Higginbotham, Stewart, and Southwick, *Circuit Judges*.
Per Curiam:[*]

Johns Manville Corporation ("Johns Manville") petitions for review of a National Labor Relations Board ("Board") decision and order determining that Johns Manville violated Sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act ("NLRA") by failing and refusing to furnish information, requested by the union that represents its employees, which was relevant and necessary to a grievance filed by a Johns Manville employee and

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60075

union bargaining unit member. The Board cross-applies for enforcement of its order. For the following reasons, we DENY Johns Manville's petition and GRANT the Board's cross-application.

## I. Factual and Procedural History

Johns Manville manufactures and warehouses building products in facilities across the country, including three facilities in Waterville and Maumee, Ohio. Plant 1 and Plant 7, and their auxiliary warehouses, are located in Waterville, and the Kingsbury warehouse is located in Maumee. Each of these three locations employs bargaining unit workers. The International Brotherhood of Teamsters, Local Union No. 20 ("Union") is a labor union that represents Johns Manville employees at its three Ohio-area facilities. The Union and Johns Manville have entered into successive collective bargaining agreements since approximately 1970. Article III of the current bargaining agreement governs the recognition of the Union as the exclusive representative of all production and maintenance employees.

This case arises from a grievance filed by Ramon LaBiche, an employee in the bargaining unit represented by the Union. LaBiche alleged that Johns Manville violated its bargaining agreement with the Union by using non-bargaining unit employees to perform unit work at two third-party warehouses, Global One Distribution or Global Distribution Center ("GDC") and Maumee Assembly. Paul Konwinski, the vice president and business representative for the Union, investigated LaBiche's allegations. Konwinski met with LaBiche, examined relevant bills of lading, and observed warehouse operations. Based on this initial investigation, the Union decided that it needed more information bearing on whether unit work was performed at those warehouses. It then filed the information request at issue with Johns Manville. In turn, Johns Manville refused to furnish the Union with (1) copies of the contract or (2) copies of all correspondence between or among GDC,

2

Maumee Assembly, and Johns Manville (or any of its affiliates), related to the work being performed at GDC and Maumee Assembly.

When Johns Manville refused to produce the requested information, the Union filed an unfair-labor-practice charge with the Board alleging that Johns Manville's refusal violated its statutory duty to bargain, which includes providing requested information relevant and necessary to the Union's representational duties. The Regional Director found merit in the Union's claims, and the matter was heard before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ determined that Johns Manville's conduct violated Sections 8(a)(5) and 8(a)(1) of the NLRA because its refusal to provide the requested information violated the Union's statutory duty to bargain. The Board considered and affirmed the ALJ's rulings and adopted the recommended order. Johns Manville then filed the instant petition with this court.

## II. Standard of Review

We will affirm the Board's findings of fact if they are "supported by substantial evidence on the record, considered as a whole." *Poly-Am., Inc. v. NLRB*, 260 F.3d 465, 476 (5th Cir. 2001). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla, and less than a preponderance." *El Paso Elec. Co. v. NLRB*, 681 F.3d 651, 656 (5th Cir. 2012) (emphasis omitted) (quoting *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993)). Under the substantial evidence standard, the ALJ's decision stands "if a reasonable person could have found what the ALJ found, even if the appellate court might have reached a different conclusion." *Tellepsen Pipeline Servs. Co. v. NLRB*, 320 F.3d 554, 559 (5th Cir. 2003) (quoting *Valmont Indus. v. NLRB*, 244 F.3d 454, 463 (5th Cir. 2001)). "The Board's determination of relevance of the information sought [by a union] in a particular case must

be given great weight by the courts, if only because it is a finding on a mixed question of law and fact, 'which is within the particular expertise of the Board.'" *NLRB v. U.S. Postal Serv.*, 128 F.3d 280, 287 (5th Cir. 1997) (quoting *NLRB v. Brazos Elec. Power Coop.*, 615 F.2d 1100, 1101 (5th Cir. 1980)).

Challenges to legal conclusions are reviewed *de novo*, *Asarco, Inc. v. NLRB*, 86 F.3d 1401, 1406 (5th Cir. 1996), while procedural and evidentiary rulings are reviewed for abuse of discretion. *Marathon LeTourneau Co., Longview Div. v. NLRB*, 699 F.2d 248, 254 (5th Cir. 1983).

## III. DISCUSSION

Section 8(a)(1) of the NLRA outlaws as "unfair labor practices" any employer activities that "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158 (a)(1). Section 8(a)(5) of the NLRA mandates that an employer must provide a union with relevant information that is necessary for the proper performance of its duties as the exclusive bargaining representative. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979). And since the NLRA "makes it an unfair labor practice for an employer to refuse to bargain in good faith with the representative of his employees," *NLRB v. Truitt Mfg. Co.*, 351 U.S. 149, 149 (1956), a refusal to furnish information to a bargaining representative "may constitute a breach of the employer's duty to bargain in good faith." *NLRB v. CJC Holdings, Inc.*, 97 F.3d 114, 117 (5th Cir. 1996); *see also Purple Commc'ns, Inc.*, 370 NLRB No. 26 (2020) (reprimanding an employer for "failing and refusing to furnish [a union] with requested information that is relevant and necessary to the Union's performance of its functions as the collective-bargaining representative of the [the employer's] unit employees").

The "key inquiry" is whether the information sought by the union is "relevant to its duties." *NLRB v. Leonard B. Herbert, Jr. & Co.*, 696 F.2d 1120, 1124 (5th Cir. 1983). The standard for establishing relevancy is the "liberal, discovery-type standard." *Id.* (citing *Acme*, 385 U.S. at 438, 438 n.6); *see also Alcan Rolled Prods.*, 358 NLRB 37, 40 (2012). Unlike requesting bargaining unit data (*i.e.*, bargaining unit employees' terms and conditions of employment), "when a union requests non-bargaining unit data, such as subcontracting costs, that information is not considered presumptively relevant." *Sara Lee v. NLRB*, 514 F.3d 422, 431 (5th Cir. 2008). Consequently, "the union has the initial burden of establishing relevancy before the employer must comply with the information request." *Id.*; *see also* NLRA, § 8(a)(5), 29 U.S.C.A. § 158(a)(5).

A union bears the burden of showing relevancy where the requested information is "not ordinarily pertinent to its performance as bargaining representative, but alleged to have become relevant due to particular circumstances." *Leonard B. Hebert, Jr. & Co.*, 696 F.2d at 1124; *NLRB v. PDK Invs., LLC*, 433 F. App'x 297, 301 (5th Cir. 2011). First, the union must show, at the time of the information request, that it articulated a legitimate purpose for seeking the information. *Sara Lee*, 514 F.3d at 431. Second, the union must show that the information it requested bears a logical relationship to a legitimate union purpose. *Id.*

For the reasons explained below, we hold that Johns Manville's refusal to furnish information requested by the Union amounted to unfair labor practices because (1) the Union had a legitimate purpose for requesting the information and (2) the information requested had a logical relationship to the Union's grievance and enforcement of the bargaining agreement. *Id.*

*A. Legitimate Purpose*

The ALJ determined that the Union had articulated legitimate reasons for seeking the requested information, specifically the need to evaluate and investigate the grievance allegations, prepare for the grievance process that was initiated by LaBiche, and ensure Johns Manville's compliance with the bargaining agreement. On appeal, Johns Manville contends that (1) the Union failed to state a legitimate purpose for the requested information and (2) the requested contracts and correspondence were not needed to determine if Johns Manville's use of the warehouses violated the bargaining agreement. Johns Manville maintains that the Union's articulated need for the requested information is based on nothing more than "unsupported assertions" and "mere suspicion."

We agree with the Board and the ALJ that the requested information was relevant and necessary to the Union's representational role in the grievance process and enforcing the bargaining agreement.

> "[T]he Board has long held that Section 8(a)(5) of the Act obligates an employer to furnish requested information which is potentially relevant to the processing of grievances. An actual grievance need not be pending nor must the requested information clearly dispose of the grievance. It is sufficient if the requested information is potentially relevant to a determination as to the merits of a grievance or an evaluation as to whether a grievance should be pursued."

*Leland Stanford Junior Univ.*, 307 NLRB 75, 80 (1992) (citing *United Tech. Corp.*, 274 NLRB 504 (1985)). Thus, the Union was entitled to the information at issue to determine if it was prudent and appropriate to file and proceed with a grievance. Moreover, the Board has persistently held that a

union has a vested interest in monitoring the collective bargaining agreement to ensure that the employer remains in compliance. *Purple Commc'ns, Inc.*, 370 NLRB No. 26 (2020) (internal quotation marks omitted) (holding that "a requesting union is entitled to data requested in order to properly administer and police a collective-bargaining agreement").

Not only did the Union articulate legitimate reasons for the requested information, but it also offered objective evidence sufficient to support its reasonable belief that bargaining unit work had been subcontracted in violation of the bargaining agreement at the two warehouses. A union satisfies its burden of showing a legitimate purpose by demonstrating "a reasonable belief supported by objective evidence for requesting the information." *PDK Invs.*, 433 F. App'x at 301. The ALJ determined, and we agree, that Konwinski's personal observations of warehouse operations, analysis of bills of lading, and interviews all objectively corroborated the charge that Johns Manville's use of the warehouses and non-bargaining unit employees contravened the bargaining agreement and that the requested information was relevant to processing the grievance and ascertaining whether bargaining unit work had been subcontracted.

### B. Logical Relationship

The ALJ also determined that the information requested by the Union conveyed a logical relationship to its legitimate purpose of investigating the grievance allegations and monitoring compliance with the bargaining agreement. On appeal, Johns Manville contends that no such logical relationship exists because its contracts and other correspondence with third-party warehouses relate to non-bargaining unit employees and entities not covered by the bargaining agreement. Apropos to that, we agree with the Board and the ALJ that "[i]t is precisely because [Johns Manville] might be, through the third-party warehouses, using nonbargaining unit employees to

perform work normally performed by bargaining unit workers that gives the Union a legitimate reason to be concerned that [Johns Manville] is using these third-party warehouses to circumvent provisions of the [collective bargaining agreement] which reserves certain job functions for bargaining unit employees." In other words, we agree that there is a logical relationship to a legitimate purpose.

The ALJ determined that the information Johns Manville provided (the articles of organization for both warehouses and other publicly available information) failed to sufficiently address its possible financial or other interest in GDC and Maumee Assembly. A copy of the contract and correspondence between Johns Manville and the warehouses is relevant in determining whether Johns Manville subcontracted bargaining unit work in violation of the bargaining agreement. The information sought would (1) reveal the type of work Johns Manville had moved to GDC or Maumee Assembly and the extent of its business relationship with them and (2) reveal if an unlawful transfer of bargaining unit work to GDC or Maumee Assembly took place. We agree with the Board and the ALJ that Johns Manville's conduct constitutes a violation of Sections 8(a)(5) and 8(a)(1). Accordingly, we conclude that the ALJ's holding is not in error. *Asarco*, 86 F.3d at 1406 ("As to questions of law, we review the decision *de novo*; however, if the NLRB has given a 'reasonably defensible' construction of a statute, we will affirm the decision.").

## IV. Conclusion

For the aforementioned reasons, Johns Manville's petition is DENIED. The Board's cross-application for enforcement is GRANTED.